455 So.2d 914 (1983)
Geryl Watson WILLIS
v.
STATE of Alabama.
3 Div. 618.
Court of Criminal Appeals of Alabama.
November 1, 1983.
Rehearing Denied November 29, 1983.
*915 Barry E. Teague, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen. and Richard L. Owens, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Geryl Watson Willis was charged in a four count indictment with the unlawful possession of cocaine, phencyclidine, methaqualone and marijuana, all contrary to the provisions of the Alabama Uniform Controlled Substances Act.
The jury found the appellant guilty under each of the four counts of the indictment and following a sentencing hearing, the trial court initially set sentence at 15 years' imprisonment on each of the four counts, or a total of 60 years, which were to be served consecutively.
After the opinion of this court in Vogel v. State, 426 So.2d 863 (Ala.Cr.App.1980), affirmed 426 So.2d 882 (Ala.1982), the trial court entertained a petition for proper sentence and the appellant's sentence was set at 15 years' imprisonment on the guilty verdict on each of the four counts, with each of the sentences to run concurrently. This appeal follows.
The appellant, Geryl Watson Willis, was found by three Montgomery police officers, asleep in room 140 Matador Inn, located just off I 85 in Montgomery, Alabama, on the early morning of November 11, 1980. The three officers, at the request of the manager of the motel, Mr. Music, followed a trail of blood leading from the parking lot directly to the room. After seeing the door ajar and knocking on same, they entered the room, where appellant lay asleep. A search of this room by Officers Acteimer, T.R. Shanks and James R. Gaines, revealed a pistol lying on a night stand, a brief case lying on an adjoining bed, which was unrumpled, several bottles of capsules found in the bathroom and some clear packages of plant material (which was later determined to be marijuana) lying on the floor near the spread on the bed. The officers had been called to the parking lot of the Matador Inn on complaint of the owner of an automobile because of a broken window in the automobile and some items missing therefrom. At the door of the motel room an antenna of a CB radio was observed, along with some booklet material which belonged to the owner of the automobile with the broken window. Upon seeing this and upon getting no response from the occupant of the room, the officers entered, found the narcotics and placed the appellant under arrest.
Shortly before entry into the motel room, a female had emerged, who appeared to be in a dazed or drunken stupor.
Monica Marie Bond testified that she had met the appellant at a night club on Fairview Avenue in Montgomery after having several drinks at Crockmier's Restaurant, where she was employed as a cocktail waitress. The appellant, Willis, had invited Ms. Bond and several companions to come to the Matador Inn to a party. Ms. Bond testified that she was handed some white powdery substance which she thought was cocaine and sniffed it at the motel room in the company of the appellant. She stated that she did not recall any other persons being present in the motel room and had no recollection of any further events until she came to the next morning and stumbled out of the room asking for help.
The manager, Mr. Music, confirmed that he observed her coming out of the room shortly after eight o'clock the next morning and had one of the employees give her a sheet or towels to cover her person and took her to the office where the police officers could talk to her.
An inventory of the contents of the room was made by the arresting officers and a statement was taken from Ms. Bond later at police headquarters.

I
The appellant raises four issues in this appeal. He first states that the trial court committed error by allowing the police officers to testify to what appeared to have been the burglary of a motor vehicle *916 on the parking lot of the Matador Inn on the night before or early morning on which the appellant was found in room 140 of the Matador Inn.
This, however, was all part of one continuous criminal transaction, as the blood trail from the broken window clearly led into the doorway of room 140 and into the room itself where appellant slept with his arm cut and bleeding, wrapped in a towel, and the sheets also contained blood of the appellant. Burlison v. State, 369 So.2d 844 (Ala.Cr.App.1979), cert. denied, Ex Parte Burlison, 369 So.2d 854 (Ala. 1979); Reed v. State, 401 So.2d 131 (Ala.Cr.App.1981), cert. denied, 401 So.2d 139 (Ala.1981). See generally, Alabama Digest Criminal Law key no. 363.
Further, there was no proper objection to the testimony. Thus, any error is not properly preserved for review.

II
The appellant also asserts that the State was improperly allowed to bolster the credibility of its own witness prior to the witness' credibility being attacked. A review of the record where this matter is alleged to have occurred (R. 99-101), however, reveals no proper objection. Thus, this issue is not properly preserved for review.

III
Appellant also asserts that he was prevented from properly examining Ms. Bond concerning her knowledge of the drug cocaine. The record here reveals that the trial court inquired concerning the granting of immunity to Ms. Bond and found that such was only with reference the events which occurred on the night and early morning of November 10-11, 1980 leading up to the arrest that morning. The trial judge then appointed experienced legal counsel to advise Ms. Bond and following consultation, she invoked her privilege against self incrimination with reference any questions concerning the use of cocaine on other occasions. Clearly, this ruling was correct and no error appears. The authorities cited by appellant's counsel in brief do not support his position.

IV
Finally, both the State and the appellant point out that the State of Alabama had given proper notice of its intent to proceed under the Alabama Habitual Felony Offender Act and that two prior felonies were shown to the trial judge. The provisions of this act are mandatory in application. Watson v. State, 392 So.2d 1274 (Ala. Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1981).
The record in the case at bar reveals the appellant had two prior felony convictions in the State of Mississippi, one for the attempted sale of controlled substances and the other for the attempted sale of marijuana (R. 245). These were not called to the attention of the trial judge who endeavored to sentence the appellant pursuant to the provisions of Vogel, supra.
As stated by this court in Coleman v. State, 424 So.2d 685 (Ala.Cr.App.1982):
"In Peoples v. State, 415 So.2d 1230 (Ala. Cr.App.1982) affirmed after remand, 421 So.2d 1383 ([Ala.]1983), we find the following:
`Ala.Code § 13A-5-9(b)(3) (Supp.1981) mandates that in all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and then is convicted of a Class "A" felony, `he must be punished by imprisonment for life or for any term of not less than 99 years.' Once a defendant admits prior felony convictions they are proved for purposes of the Habitual Offender Act. See, Smith v. State, 409 So.2d 455 (Ala.Cr. App.1981); Douglas v. State, 406 So.2d 1051 (Ala.Cr.App.) cert. denied 406 So.2d 1053 (Ala.1981).
"As in Peoples, supra:
`We affirm the guilt phase of the trial. However, because of the failure to apply the Habitual Felony Offender Act, we remand this cause with directions to the trial court to conduct another *917 sentencing hearing applying said act. The State of Alabama should, a reasonable time prior to the sentencing hearing, notify the appellant of the prior convictions under which the State plans to proceed, although for all practical purposes the appellant is aware of such prior convictions.
`All parties should be present, with counsel, and any evidence offered shall be recorded for this court's review. A complete transcript of these proceedings shall be transmitted to this court under Motley, supra and Aplin v. State [421 So.2d 1299] [Ms. December 29, 1981] (Ala.Cr.App.1981). See Motley v. State, 409 So.2d 945 (Ala.Cr.App. 1981).'"
AFFIRMED, BUT REMANDED WITH DIRECTIONS FOR ANOTHER SENTENCING HEARING.
HARRIS, J., concurs.
BOWEN, P.J., concurs in result with opinion.
HUBERT TAYLOR, J., dissents with opinion.
SAM TAYLOR, J., recuses self.
BOWEN, Presiding Judge, concurring in result only.
I am hard-pressed to understand how the burglary of the automobile in which no drugs or contraband were found and the illegal possession of controlled substances found in a motel room were part of "one continuous criminal transaction" as found by the majority of this Court. There is no contention that the drugs were stolen from the car. Certainly, it cannot be argued that evidence of the burglary "is inseparably connected with or is a part of the res gestae of the" possession case. C. Gamble, McElroy's Alabama Evidence, Section 69.01(3) (3rd ed. 1977). Even the Attorney General does not argue this on appeal.
However, despite the prejudicial and irrelevant nature of the burglary, the fact remains that there was no proper objection.
HUBERT TAYLOR, Judge, dissenting.
The refusal of the trial court to allow defense counsel to cross examine the witness for the State, Mrs. Bond, was clearly error. The State claims that cross examination would concern only collateral matters; however, I feel the identity of the substance allegedly given to Mrs. Bond by the appellant is the most material aspect of the State's case. A witness cannot selectively testify on direct examination concerning certain material facts and then refuse to answer on the ground of the right to remain silent when questioned about the same material facts on cross examination. International Bro. of Teamsters v. Hatas, 287 Ala. 344, 252 So.2d 7 (1971).
The State should not be allowed to fashion immunity in a manner that precludes cross examination on material aspects of a case. The testimony of Mrs. Bond should have been excluded once it became apparent that she was not available for cross examination. The right to a vigorous and detailed cross examination in a criminal proceeding is at the very heart of the judicial process. It is that right that was denied appellant and for which he deserves a new trial.