Johnny L. Hughes was indicted for the offenses of burglary, theft and receiving stolen property. There was submitted to the court an Ireland form properly executed, showing the minimum sentence to be one year and one day and the maximum 10 years. The appellant entered a plea of guilty, with the court observing that these three charges, theft in the second degree, burglary in the third degree and receiving stolen property, were all class C felonies. The following then occurred:
"THE COURT: Has he any previous convictions?
 "MR. BAXTER: I do not believe he has any previous felony convictions, Your Honor.
"MR. WEBSTER: None were made known to me, Judge.
 "THE COURT: You understand then that sentencing is up to the Judge in the case between one year and one day imprisonment and ten years' imprisonment and there can be a fine up to $5,000; you understand that?
"THE DEFENDANT: Yes, sir."
The appellant then pleaded guilty and a presentence investigation was requested on the defendant's application for probation and a date set. Then, the following transpired: *Page 1384 
 "MR. WEBSTER: Judge, Mr. Beasley just indicated to me that he thought the defendant did have a prior conviction, so I would like an opportunity to check that out prior to any sentencing being imposed.
 "THE COURT: Let me go back here then. Mr. Hughes, before I accept your plea of guilty, and I may set it aside, you have entered a plea of guilty, you understand now if you have a prior conviction that is going to accelerate the minimum punishment and the maximum punishment with which you can be faced. Do you understand that?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you also understand that we are going to know about it by the time we get through with these pre-sentence investigation if you do have.
"THE DEFENDANT: Yes, sir.
"THE COURT: Do you have any?
"THE DEFENDANT: Yes, sir.
After other discussion, it was stated:
 "MR. WEBSTER: We show a plea to Petty Larceny at one time arising out of a Grand Larceny charge. We also show a burglary III conviction. This is just an FBI Rap Sheet. It is not a record of conviction We would like an opportunity to check that out. It shows confinement for two years, and the detective informs me that he has just gotten out of the penitentiary.
 "THE COURT: Have you been in the penitentiary, Mr. Hughes?
"THE DEFENDANT: Yes, sir.
"THE COURT: On what charge?
"THE DEFENDANT: Burglary.
 "MR. BAXTER: Judge, in discussing with Mr. Morgan we thought it was —
 "THE COURT: Mr. Hughes, do you want to maintain your plea of guilty to this charge?
"THE DEFENDANT: Yes, sir.
 "THE COURT: You understand, sir, that if you have shown to have been convicted of a previous burglary that the minimum sentence would be two years and the maximum sentence would be twenty years?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you understand that sentencing is up to the Judge?
"THE DEFENDANT: Yes, sir.
 "THE COURT: I give you the opportunity now to withdraw your plea if you choose to do that.
"THE DEFENDANT: I remain guilty.
"THE COURT: Sir?
"THE DEFENDANT: Guilty.
"THE COURT: You insist on your guilty plea?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Mr. Hughes, let me inform you of one other thing. I am doing my best to inform you of the minimum and maximum punishment under the law that is available to you based upon your word to me, which has been worthless up until now. You have told me about three different things. So, you understand now that if we find out some more and it becomes under the Habitual Offender Act that the minimum sentence is ten years and the maximum sentence is life, and because you have something that I am unaware of, I am not going to let you withdraw your plea. Only you know."
 "Let me inform you, sir, that if you have two prior felony convictions and you are convicted on this one, the minimum sentence will be ten years and the maximum sentence will be life. Do you understand that?
"THE DEFENDANT: Yes, sir.
 "THE COURT: If you have three previous felony convictions and you are convicted of this charge, there won't be any minimum sentence or maximum sentence. It would just be life. Do you understand that?
"THE DEFENDANT: Yes, sir.
 "THE COURT: It could be 99 years or life. Do you understand now?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you want to maintain your plea of guilty? You know what your previous record is, I don't.
"THE DEFENDANT: Yes, sir. *Page 1385 
 "THE COURT: I accept your plea of guilty with the firm understanding that I am relying on your word. Do you understand that I am relying on what you tell me about your previous convictions to try to inform you of the punishments in the case? Do you understand that?
"THE DEFENDANT: Yes, sir."
The court, then noting the inaccurate statements made by the appellant, again informed the appellant of the maximums and the minimums in each case; in case there was one prior felony, two prior felonies or three or more prior felonies. The court then asked the defendant again,
"THE COURT: Do you wish to withdraw your plea?
"THE DEFENDANT: No, sir.
 "THE COURT: Then you stand adjudged guilty, and your application for probation will be on the 3rd day of May."
Appellant was sentenced to twenty years' imprisonment in the penitentiary. Appellant, with a new attorney, seeks a reversal of his finding of guilty and sentence.
 I
Counsel for the appellant attacks the plea and sentence in a number of different ways.
Appellant first contends that his plea of guilty was not intelligently and voluntarily made because his attorney had informed him that the maximum that he would receive was 10 years' imprisonment. Appellant contends that there existed a "deal" regarding sentence between his appointed attorney and the representative of the district attorney's office. It was stated in court, however, that this plea was to be a "blind" plea, by which the representative of the district attorney's office meant that there was no sentencing agreement resulting from plea-bargaining. There is no evidence of the existence of any sentencing agreement. There is every evidence that this court went far beyond what was required in making sure that this appellant knew very clearly what his minimum and maximum sentences might be, based on his number of prior felony convictions. Further, the court was careful to point out that the sentencing was within the discretion of the court itself. The appellant indicated that he did understand that. The appellant's responses were, of course, "situational"; the court noted this tendency.
 II
Appellant next contends that this guilty plea could not have been voluntarily made because he was not given an opportunity to consult with his counsel about withdrawing his plea. From the dialogue quoted above, it is clear that the appellant had his counsel present and participating in every moment of the hearing at which he pleaded guilty and also clear that he understood what the judge was saying to him. Under these circumstances, any failure to consult with counsel in regard to enhanced punishment resulted from the appellant's failure to be truthful with counsel in regard to his prior felonies. It does appear from the record, R17-18, that the appellant had served 18 months for grand larceny; that he was sentenced to two years for receiving stolen property but was placed on the work release program on that sentence; that he then violated the terms of the work release program. It is inconceivable that the appellant did not know that he had been convicted of a felony in the past. This contention is without merit.
 III
Appellant next contends that he was denied due process when the notice to sentence under the Habitual Felony Offender Act was not received until after the guilty plea and that the "Exhibit A" showed one year and one day to ten years to be the possible sentence. We have held in several cases that the application of the Habitual Felony Offender Act is mandatory in every case and not optional. There is no "magic" in the required notice. In this instance it was because of the deliberate concealment of prior felonies by the appellant that the state did not sooner serve the notice of *Page 1386 
intention to proceed under the Habitual Felony Offender Act. We find that the court did not err in this respect and that appellant's due process rights were not violated. As to the "Exhibit A" Ireland form showing one year and one day to ten years as being the possible sentence, the quoted portion of the guilty plea hearing above makes it clear that the appellant did know what the correct minimums and maximums were. There is no merit to these arguments.
 IV
Appellant appears to contend that the trial court ruled that it could not grant probation because of the existence of two prior felonies. This court is unable to find in the record any such statement or ruling by the trial court. There is no merit to this contention.
 V
Finally, appellant contends that his sentence was inconsistent with the sentence of his co-defendant, Otha C. Jamar. It does not appear that Otha C. Jamar was subject to the provisions of the Habitual Felony Offender Act. In the case of this appellant, the smallest sentence the law could impose was fifteen years. In our opinion, the sentence imposed did not violate the constitutional rights of the appellant under the doctrine of Solem v. Helm, ___ U.S. ___, 103 S.Ct. 3001,77 L.Ed.2d 637 (1983).
We find no error committed by the trial court, but rather the appropriate reaction to the changes of events in the course of the case. This case is affirmed.
AFFIRMED.
All the Judges concur except TYSON, J., who concurs in result only.