[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 337 
The appellant, Alvin H. Daniels, was convicted of robbery in the first degree. He was sentenced as a habitual offender to life imprisonment without the possibility of parole.
The appellant waived his right to counsel and represented himself at trial. Initially, three different lawyers were appointed to assist him, but the appellant asked each to withdraw.
The state's evidence tended to show that on December 1, 1990, Krista Synder, Janice Brown, and three other women went to the Birmingham Civic Center with their daughters to a concert. As they approached the door to the center they were told that they could not bring cameras into the concert. Synder and Brown walked back to their van, which was parked several blocks away. As they were walking to the van, they noticed two men sitting on the hood of a car in the street. As they were putting the cameras into the van, the two men approached them. One of them was the appellant and he was armed with a lead pipe. He told the two women, "This is a robbery." He then asked for their jewelry and told them to start the van. After their demands had been met, the appellant and his cohort jumped in the van and tried to leave. The two robbers, however, could not drive the van because the emergency brake was engaged and they did not know how to disengage the brake. Eventually, Ms. Brown disengaged the emergency brake, and the robbers sped off in the van. Two weeks later, the van was recovered in Atlanta, Georgia. The appellant's Wisconsin identification card was discovered between the two front seats of the van.
 I
The appellant initially contends that the trial court erred in denying his motion for a psychiatric examination to determine whether he was competent to stand trial. Specifically, the appellant argues that he should have been given a competency hearing.
The court ordered that the appellant be examined by a psychiatrist, Dr. Rosencrans. The court talked with Dr. Rosencrans by telephone before the trial. The telephone conversation appears in the record. Dr. Rosencrans said that he felt that the appellant was competent to stand trial and that from his talk with the appellant he felt that the appellant had no mental problems.
Section 15-16-21, Code of Alabama 1975, states:
 "If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity. . . ."
(Emphasis added.)
This section places the initial burden on the trial court to determine whether there are "reasonable grounds" to doubt the accused's sanity. "The trial court is, thus, the 'screening agent' for mental examination requests." Reese v. State,549 So.2d 148, 150 (Ala.Cr.App. 1989). " 'It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity, and thus, whether a further examination is required.' " 549 So.2d at 150. The trial court makes a preliminary determination "without the aid of a jury as to whether reasonable grounds existed to doubt the defendant's competency." Rule 11.3, A.R.Crim.P., Committee Comments.
The trial court's denial of the appellant's motion for a competency hearing was not error. As the court points out, the appellant was very articulate as evidenced by *Page 338 
the voluminous record on appeal. There are several volumes of pre-trial motions, and the record for this first degree robbery case consists of nine volumes. The court took every precaution to ensure that the appellant received a fair trial, especially since he chose to represent himself.
 II
The appellant next argues that his third appointed counsel, Mr. Bramer, had conflicting interests, which prevented him from providing the appellant effective assistance of counsel. The appellant was adamant about representing himself. The only time that he asked for the assistance of counsel was when he requested that Mr. Bramer to assist him in any plea negotiations with the district attorney's office. Mr. Bramer was also retained by the court to investigate the robbery on behalf of the appellant. The appellant maintains that Mr. Bramer's roles were conflicting and against his interest. The appellant fails to point to any specific instances in which Mr. Bramer's actions were against his interest. Furthermore, Mr. Bramer was not counsel of record, he was appointed only in the limited role of standby counsel.
 " 'In order to establish a violation of the Sixth Amendment [with regard to conflicts of interests], a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). A defendant who asserts a conflict of interest claim need not prove prejudice since prejudice is presumed if he 'demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." ' Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (quoting Cuyler 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718)."
Self v. State, 564 So.2d 1023, 1033 (Ala.Cr.App. 1989), writ quashed, 564 So.2d 1035 (Ala. 1990).
Mr. Bramer played a very limited part in the proceedings against the appellant. The appellant has failed to show that any "actual" conflict existed here. See Duren v. State,590 So.2d 360, 362 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1594,118 L.Ed.2d 310 (1992).
 III
The appellant further contends that he was misled by the trial court and by Mr. Bramer into believing that the state would negotiate a plea bargain with him. However, the record does not support this contention. The record shows that the appellant was offered a plea agreement by the state but that he refused to accept it. The following occurred:
 "The Court: . . . Mr. Daniels, may I hear from you on whether you reject the State's offer of settlement?
"Mr. Daniels: Yes, sir, I do."
The appellant cannot claim any errors concerning any plea negotiations when he chose not to accept the offer made by the state.
 IV
The appellant next contends that the trial court erred in not ensuring that his defense witnesses were subpoenaed for trial. The appellant's contention is not supported by the record. The record shows that the appellant submitted the names of 18 persons he wished to testify at trial, some or all of whom he thought could say he was at another place at the time of the commission of the offense. Of the 18, 14 lived in the state of Wisconsin. Mr. Bramer was asked by the court to investigate the appellant's case. He talked with several people on the appellant's list and told the court that no one that he talked to would provide an alibi for the appellant. The trial court, in one instance, attempted to talk by telephone with the appellant's brother, but no one at his brother's number answered the telephone. The appellant himself dialed the telephone number. Another possible witness's telephone was disconnected and there was no forwarding number. It appears *Page 339 
from the record that the court "bent over backward" to accommodate the appellant's requests. However, the appellant himself could point to no one person who could furnish him with an alibi. The court also stated that if the appellant named anyone on his witness list who could give him an alibi, it would arrange for that witness's air transportation from Wisconsin. The appellant's allegations are unsupported by the record.
 V
The appellant further argues that the trial court erred in denying his motion for a continuance. He maintains on appeal that he wanted time to obtain the items he requested during discovery and to retain an attorney. This allegation is unsupported by the record. The trial court asked the appellant not once but many times before the commencement of the trial if he would accept the help of an attorney. The appellant constantly and adamantly refused and repeatedly told the court that he wished to represent himself.
Here the record shows that the appellant had access approximately one month before trial to the materials he requested through discovery. Although Mr. Bramer had obtained the items from the district attorney's office at the initial hearing concerning discovery, the appellant refused to accept the materials from Mr. Bramer. The record states that Mr. Bramer placed the materials on the desk where the appellant could pick them up. However this was not the only time the discovery items were offered to the appellant. The appellant was again given access to these materials by the district attorney's office.
The trial court's denial of appellant's motion for a continuance will not be reversed unless the court has abused its discretion. Adkins v. State, 600 So.2d 1054 (Ala.Cr.App. 1990), remanded, 600 So.2d 1067 (Ala. 1992), after remand,600 So.2d 1072 (Ala.Cr.App. 1992); Canada v. State, 421 So.2d 140
(Ala.Cr.App. 1982); Jenkins v. State, 384 So.2d 1135
(Ala.Cr.App. 1979), cert. denied, 384 So.2d 1141 (Ala. 1980). The record shows no such abuse here.
 VI
The appellant next contends that the trial court erred in allowing an attorney who had withdrawn from the case to videotape an interview with the victims. This tape was not received into evidence at trial. In an exchange between the attorney in question and the trial court, the following occurred:
 "Q [The Court]: Did you, or did you not represent this man at my request at one point in time?
"A: Yes, Your Honor.
"Q: Did he ask you to be relieved?
"A: Yes, Your Honor.
 "Q: Did you come to me in some state of confusion about your role in the preliminary that we had set up through Judge Johnson?
"A: Yes, Your Honor.
 "Q: Did I advise you to stay with it — at least talk to the alleged victims and tape their dialogue with you?
"A: That is correct, Your Honor."
When the interview with the victims took place, the attorney who questioned them was under the impression that he still represented the appellant. The appellant received a copy of the videotape of the interview. This could not have affected the appellant's substantial rights. Rule 45, A.R.App.P.
 VII
The appellant next argues that the state suppressed exculpatory evidence in violation of his rights under Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He further contends that the state violated the discovery order. The appellant maintains that the state did not furnish him with a personal telephone book found in the van, which was thought to belong to the appellant; a personal check on the victim's account, which was forged by the appellant; a towing receipt; and other items found in the van. However, these items were not exculpatory but were inculpatory. They tended to show the appellant's guilt, not his innocence. Further, *Page 340 
as the appellant concedes in brief, he was furnished these items several weeks prior to trial. No Brady violation occurred here.
 VIII
The appellant next contends that his removal from the courtroom resulted in a denial of his due process rights. He maintains that his removal resulted in his being perceived by the jury as violent, uncooperative, and disruptive. However, the record shows that the appellant voluntarily removed himself from the courtroom. The appellant's reasons for removal are unclear from the record, although he argues on appeal that the court denied him a continuance to obtain counsel. The appellant also argues that the jury might infer his guilt if they perceived him as acting in a violent, uncooperative, and disruptive manner. The record reflects that the appellant was free to return to court at any time and that he was not barred from returning. Furthermore, the court told the jury not to form any prejudice against the appellant from his absence or his demeanor during the trial. The assistant district attorney recognized that the court did "a double back flip to be fair to this man."
This court has recognized that a defendant's voluntary absence from the courtroom during the trial of a noncapital case does not prevent the trial court from trying the case to its conclusion. Young v. State, 455 So.2d 208, 209 (Ala.Cr.App. 1984). A defendant who voluntarily absents himself from trial proceedings may not later seek to profit from his own action by attacking the validity of the judicial process.455 So.2d at 209. "He cannot beat the system by voluntary absence."455 So.2d at 210.
 IX
The appellant further contends that he was denied effective assistance of counsel as mandated by Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The appellant waived appointed counsel and chose to represent himself at trial. The United States Supreme Court in Strickland
dealt with ineffective defense counsel, not pro se defendants. A defendant who elects to represent himself cannot later claim that the quality of his own representation amounted to ineffective assistance of counsel. Faretta v. California,422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The defendant alone will bear the personal consequences of a conviction. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. Although he may conduct his own defense ultimately to his own detriment, his choice must be honored. Faretta,422 U.S. at 835, 95 S.Ct. at 2541. "[A] defendant who represents himself may not thereafter disaffirm his deliberate trial decisions."Beckley v. State, 333 So.2d 875, 880 (Ala.Cr.App. 1976). The appellant was not denied effective assistance of counsel.
A pro se defendant may request representation even if he has previously dismissed his counsel. The right to counsel is preserved at every stage of the proceedings. Phelps v. State,416 So.2d 766, 768 (Ala.Cr.App. 1982). The appellant could have exercised his right to court-appointed counsel at any time. He chose to represent himself at trial, however, consecutively rejecting three appointed attorneys.
 X
The appellant contends that the trial court erred by denying his motion to suppress the pre-trial identification evidence. He claims that the identification procedures were tainted and impermissibly based upon alleged inconsistencies in the record and a long and unestablished chain of custody.
Pre-trial identification may be set aside as prejudicial only where such procedures are so "impermissively suggestive" as to cause a substantial likelihood of misidentification.Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967,19 L.Ed.2d 1247 (1968); Ex parte Stout, 547 So.2d 901 (Ala. 1989). Inconsistencies in a witness's testimony go to the weight of the evidence, not to its admissibility. Where conflicting evidence has been presented to the jury, it is its duty to resolve and determine guilt or innocence. The jury may believe any or all of the testimony presented *Page 341 
by either side. Terry v. State, 424 So.2d 652 (Ala.Cr.App. 1982).
The record shows that upon discovery of the appellant's driver's license in the recovered van, the victim immediately recognized the picture as that of her assailant/robber. This happened before the police showed the victim a photographic array that included the appellant's picture. The victim also identified the appellant and the card at trial. An in-court identification of the accused is correctly received into evidence when it is shown to have a basis independent of any pre-trial identification procedures. Mullis v. State,545 So.2d 205 (Ala.Cr.App. 1989).
The victim's identification of the appellant was correctly received into evidence.
 XI
The appellant also contends that the Habitual Felony Offender Act (HFOA) was unconstitutionally and illegally applied to him. All of the appellant's prior convictions took place in Wisconsin. The appellant first argues that only two of his former convictions should count against him under the HFOA, namely his two forgery convictions. The appellant argues that his conviction for theft of an automobile would not be a felony in Alabama and that the conviction for escape should not be counted because it happened while he was on a work release program. He contends, therefore, that the HFOA was misapplied.
The Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975, provides:
 "(a) In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows:
 "(1) On conviction of a Class C felony, he must be punished for a Class B felony;
 "(2) On conviction of a Class B felony, he must be punished for a Class A felony;
 "(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.
 "(b) In all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he must be punished as follows:
 "(1) On conviction of a Class C felony, he must be punished for a Class A felony;
 "(2) On conviction of a Class B felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years;
 "(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not less than 99 years.
 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
 "(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;
 "(2) On conviction for a Class B felony, he must be punished by imprisonment for life in the penitentiary;
 "(3) On conviction for a Class A felony, he must be punished by imprisonment for life without parole."
(Emphasis added.)
"The word 'must,' as it is used in § 13A-5-9, leaves the court with no discretion as to whether a repeat offender is to be punished under the [habitual felony offender] statute."Watson v. State, 392 So.2d 1274, 1276 (Ala.Cr.App. 1980), writ denied, 392 So.2d 1280 (1981). See also Ex parte Chambers,522 So.2d 313 (Ala. 1987); Willis v. State, 455 So.2d 914
(Ala.Cr.App. 1983), rev'd on other grounds, 455 So.2d 917 (Ala. 1984); Hughes v. State, 443 So.2d 1382 (Ala.Cr.App. 1983).
The HFOA requires three prior felony convictions before a defendant convicted of a Class A felony must be sentenced *Page 342 
to imprisonment for life without the possibility of parole. Section 13A-5-9(c), Code of Alabama 1975. In determining whether an out-of-state conviction will be used to enhance punishment pursuant to the HFOA, the conduct upon which the foreign conviction is based must be considered and not the foreign jurisdiction's treatment of that conduct. Mitchell v.State, 579 So.2d 45 (Ala.Cr.App. 1991), cert. denied,596 So.2d 954 (Ala. 1992).
The two forgery convictions were charged under a statute similar to Alabama's forgery statute, which is found in §13A-9-3 Code of Alabama, and which makes forgery a felony. The appellant's automobile theft conviction resulted in a two-year sentence and was considered a felony in Wisconsin. Stealing an automobile in Alabama is likewise a felony, pursuant to §13A-8-3(b), Code of Alabama 1975.
The State also produced evidence of a fourth felony. The appellant was convicted of escape, which is also a felony in Alabama pursuant to § 13A-10-32, Code of Alabama 1975, and which was correctly used for enhancement purposes. Bridges v.State, 563 So.2d 13 (Ala.Cr.App. 1989).
The appellant also contends that the HFOA is biased and invidious and that it violates his equal protection rights. This argument has been previously considered and rejected, and we again reject it. Seritt v. Alabama, 731 F.2d 728 (11th Cir.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545,83 L.Ed.2d 433 (1984); Herring v. State, 563 So.2d 33 (Ala.Cr.App. 1990). Constitutional challenges to the HFOA have been rejected by Alabama and federal courts many times.
The appellant further contends that he was not given notice that he would be sentenced as a habitual offender. The record does not support this allegation. The court informed the appellant several times that if convicted he would be sentenced as a habitual offender.
The appellant was correctly sentenced to imprisonment for life without the possibility of parole. No error occurred here.
The appellant presents numerous others issues in brief. They are either unsupported by the record or frivolous. The court took every precaution to ensure that the appellant received a fair trial. Most of the arguments made in his brief are directly opposite to the argument that the appellant himself made at trial, thereby presenting the court with a constitutional minefield. Judge Hard's performance was consistent with the highest traditions of an excellent trial judiciary. We do not believe that an accused, however experienced, can defeat the functioning of the criminal justice system by choking it with its own rules.
AFFIRMED.
All the Judges concur.