405 So.2d 758 (1981)
Charles Wayne POLK, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1140.
District Court of Appeal of Florida, Third District.
November 3, 1981.
*759 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Polk appeals his conviction and sentence for unlawful possession of a short-barreled shot-gun and unlawful possession of a firearm by convicted felon entered after plea of nolo contendere wherein he preserved the right to review the trial court's denial of his motion to suppress a firearm and motion to *760 suppress a certified copy of judgment and conviction and sentence. We affirm.
Testimony of Officer Fagan at the hearing on motion to suppress physical evidence was as follows: Fagan and his partner, Jennings, were on routine patrol during the late evening hours of December, 1978 when Fagan observed defendant "standing in the shadows" outside a convenience store as the store was closing. Only the two clerks were still on the premises. According to Fagan, "if you would have been inside the store, there was no way you could have seen him from that angle." Two other factors directed the officer's attention to the defendant: (1) the particular convenience store had been frequently robbed, and (2) defendant was wearing a jacket with a hood, and "it was pulled completely over his face and it was not a cool night." The officers then drove into the parking lot of the store. Defendant turned to look in the direction of the officer and thereafter placed an object on the ground. The officers drove to within five to ten feet of the defendant with their automobile light shining on him. Officer Fagan ordered defendant to approach the police vehicle. After the second or third order defendant complied. Fagan then noticed a three or four inch bulge in the defendant's jacket. Fagan inquired of the defendant his reasons for being in the area. Defendant initially responded he was waiting for a friend whose last name he could not recall. When the officer expressed disbelief of the story, defendant gave a different answer  that he had just been run off the highway by a number of guys who were bothering him. During the inquiry by Officer Fagan, Officer Jennings walked toward the area where defendant was seen to have placed the object and recovered a loaded short-barreled shot-gun. When Fagan saw what Jennings picked up he immediately reached into defendant's pockets in the area of the bulge, and retrieved shot-gun shells. Defendant was questioned about ownership of the gun, and he answered that he found it. Defendant was then placed under arrest and advised of his rights.
By this appeal defendant challenges the initial investigatory detention on the grounds that there was no articulable suspicion of defendant's involvement in criminal activity. This initial detention led to recovery of the firearm which defendant seeks to have suppressed. On the facts of this case we find a lengthy analysis unwarranted and affirm the detention and search on authority of Sections 856.021 and 901.21, Florida Statutes (1979); State v. Ecker, 311 So.2d 104 (Fla. 1975), cert. denied, sub nom., Bell v. Florida, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975); State v. Washington, 376 So.2d 1216 (Fla. 3d DCA 1979); Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977). We note further that defendant does not challenge his conviction for loitering and prowling.
As part of its proof in support of the charge of unlawful possession of a firearm by a convicted felon, the state offered a copy of the judgment of conviction and sentence which had been certified by the Clerk of the Dade County Criminal Court of Records which reflected, (1) defendant had been charged with the crime of robbery, (2) defendant had pleaded guilty to robbery, and (3) defendant had been sentenced to five years in the state penitentiary. See Dowling v. State, 210 So.2d 280 (Fla. 2d DCA 1968). Defendant filed a pre-trial motion to suppress the copy of judgment.[1]
Now, nine years after conviction and sentence, defendant claims by the motion that the trial court failed to advise him of the constitutional rights he would abandon by pleading guilty, and more particularly, of the consequences that could follow a future arrest as a convicted felon.
Defendant was called to testify at the hearing on the motion to suppress the certified copy of judgment of conviction and sentence. The following colloquy appears in the record:
Mr. Snyder: Do you recall being before Judge Turner with regards to a charge of robbery?

*761 The Defendant: Yes, sir.
* * * * * *
Mr. Snyder: What, if anything, do you recall specifically that counsel advised you?
The Defendant: He came in and said that I had been offered a deal of five years, and that five years would dispose of the case in question, and it was another case, for the two cases, the five years, and I had just beat a case, so I said I don't take my chances, because I can't prove that I didn't do it, so he advised, that if I feel I couldn't prove it, he advised I take the jail, and I said, "Okay."
* * * * * *
Mr. Snyder: Do you recall anything Judge Turner advised you before formally accepting your plea and finding you guilty?
The Defendant: Yes, sir.
Mr. Snyder: What, if anything, do you remember him telling you?
The Defendant: He asked me had anything been promised to me. I told him, "No, sir." ... He said, am I in agreement with my attorney and with the plea, and I said, "Yes, sir".
He asked me if my testimony was given freely and voluntarily and I said, "Yes, sir."
Then he asked the State if the State agreed upon the five years, and the State said, yes, and then I was sentenced to five years in the penitentiary.
Mr. Snyder: Do you recall any further conversations or anything else that Judge Turner advised you, at that particular time?
The Defendant: No, I don't.
Mr. Snyder: Do you recall Judge Turner going through a list of rights that you had, Constitutional rights that you had prior to entering that plea?
The Defendant: No, I don't.
Mr. Snyder: Did Judge Turner ever advise you of the possible consequences of your entering a plea of guilty?
Do you specifically recall that?
The Defendant: No, sir.
* * * * * *
Mr. Snyder: Did Judge Turner ever advise you that if you accepted a plea and were adjudicated guilty, that if you were arrested again, and in the present posture you are in now, you could be charged as a residuous or habitual offender, or specific charges related to convicted felons?
The Defendant: He just said that if I would be able to maintain myself that I would be able to be out x amount of years.
Polk is here charged with possession of a firearm by a convicted felon. An essential element of the offense, which must be proved, is that he was previously convicted of a felony. The state's burden as to proof of that element is discharged when a record of the prior conviction is offered in evidence. Thereafter the defendant has the privilege of establishing the invalidity, and therefore the evidentiary incompetence of the record of judgment. State v. Davis, 203 So.2d 160 (Fla. 1967). We hold that an inability of the defendant to recall whether the trial court advised him of the constitutional rights abandoned by a plea of guilty, without more, which failure to recollect comes nine years after conviction and many years after sentence has been served, does not overcome the presumption of validity accorded a final judgment of a court of record. Cf. Bellew v. Gunn, 532 F.2d 1288 (9th Cir.1976), cert. denied, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976).
Although at the time of appellant's conviction a trial judge was required, before accepting a guilty plea, to advise the accused of the maximum sentence possible, he was not and still is not required to advise the accused of every collateral consequence which follows from a guilty plea. Tindall v. United States, 469 F.2d 92 (5th Cir.1972) (that federal sentence would run consecutive to and not concurrent with state sentence), and cases compiled therein, Trujillo v. United States, 377 F.2d 266 (5th Cir.1967), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967) (ineligibility for *762 parole); Ladner v. Henderson, 438 F.2d 638 (5th Cir.1971) (loss of good time); United States v. Offen, 439 F.2d 1079 (5th Cir.1971) (loss of rights of citizenship). See also United States v. Parrino, 212 F.2d 919 (2d Cir.1954) (deportation), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); Edwards v. State, 393 So.2d 597 (Fla. 3d DCA 1981); Knowles v. State, 356 So.2d 885 (Fla. 3d DCA 1978) (no requirement to advise of mandatory minimum sentence prior to adoption of Fla.R.Crim.P. 3.172(c)(i)). That a convicted felon may not own or possess a firearm is added to the list of collateral consequences which follow from a guilty plea, of which the trial court need not advise the accused. In this case the direct consequence of the guilty plea was a five-year term of imprisonment, precisely the sentence offered by the court and intelligently accepted by the defendant.
Affirmed.
NOTES
[1] A pre-trial motion is an appropriate means of challenging the validity of a prior conviction. See, e.g., Davis v. State, 191 So.2d 440 (Fla. 3d DCA 1966).