Niculai Rumpel appeals from the circuit court's summary dismissal of his postconviction petition filed pursuant to Rule 32, Ala.R.Crim.P. In 1999, pursuant to a plea-bargain agreement, Rumpel pleaded guilty to the following charges for which he had been indicted: three counts of first-degree sexual abuse and two counts of enticing a child for immoral purposes. He also pleaded guilty to a fourth first-degree sexual abuse, a lesser offense included in a first-degree rape indictment. For each sexual-abuse conviction, he was sentenced to 10 years' imprisonment. For each conviction for enticing a child, he was sentenced to five years' imprisonment. The trial court ordered that all sentences are to run concurrently and it split each sentence, ordering Rumpel to serve two years' imprisonment followed by the balance on probation. Rumpel did not appeal these convictions and sentences.
Rumpel contends that the circuit court erred in dismissing his petition without an evidentiary hearing. In his petition, he asserted two grounds: (1) that his counsel were ineffective for failing to advise him that, as an immigrant and a resident alien, he would be subject to mandatory detention by the United States Immigration and Naturalization Service ("the INS") and to deportation proceedings when he has served his sentences if convicted of the charges and that, had counsel so advised him, he would not have pleaded guilty; and (2) that his guilty pleas were not knowing, voluntary, and intelligent because, he argued, neither the trial court nor the "Ireland" form advised him of "the possibility or probability of deportation or other adverse immigration consequences" of pleading guilty, which, he argued, was required by due process and Rule 14.4, Ala.R.Crim.P.[1]
Because neither the State, in its motion to dismiss Rumpel's petition, nor *Page 401 
anything in the record contradicts Rumpel's allegations of fact alleged in his petition, this court must take those factual allegations as true.See Goetzman v. State, 844 So.2d 1289 (Ala.Crim.App. 2002). We start with the facts that Rumpel is an immigrant and a resident alien; that these facts were obvious to the trial court and to Rumpel's attorneys; that Rumpel was not advised of the possible immigration consequences of a plea of guilty; and that, because of his convictions, the INS has filed a detainer to take him into custody for deportation proceedings when he is released from the Alabama Department of Corrections.
First, Rumpel contends that the circuit court erred in using the procedural bars of Rule 32.2(a)(3) and (5) in dismissing his petition. The court concluded that "the sole issue" in Rumpel's petition was that his pleas had been unlawfully induced or that they were not voluntarily made. It found that this issue was precluded because it could have been, but was not, raised at the plea proceeding, at sentencing, or on appeal. However, Rumpel correctly points out that a challenge in a Rule 32 petition to the voluntariness of a guilty plea is not precluded by the petitioner's failure to have raised the issue at trial or on appeal. Averyv. State, 825 So.2d 129 (Ala.Crim.App. 1999). The attorney general concedes that the circuit court's order overlooked Rumpel's allegation of ineffective assistance of counsel, which is not subject to preclusion, as the attorney general points out. See Drake v. State, 620 So.2d 60, 61
(Ala.Crim.App. 1992) (ineffective-counsel claims cannot be precluded from review in a timely-filed Rule 32 petition where they could not have been raised on appeal). We agree with Rumpel's conclusion that the circuit court should not have denied his petition on the preclusion grounds stated.
Thus, we turn to the merits of Rumpel's claims to determine if there is any reason for upholding the circuit court's dismissal. See Reed v.State, 748 So.2d 231, 233 (Ala.Crim.App. 1999) ("If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition."). In doing so, we address Rumpel's second issue on appeal: "Whether the uncontroverted factual allegations of Rumpel's Rule 32 Petition entitled him to a hearing." (Appellant's brief, p. 7.) The attorney general asks us to remand this case for the circuit court to address the merits of Rumpel's ineffective-assistance-of-counsel claim. However, taking the allegations of fact in Rumpel's petition as undisputed, we find we are confronted with the following questions of law: before accepting a guilty plea from an alien defendant, must the trial court inform the defendant of the immigration consequences of a conviction, and is defense counsel ineffective in not so informing the defendant? We agree with Rumpel that the de novo standard of review applies: "[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, the court's review in a Rule 32 proceeding is de novo." Ex parte White,792 So.2d 1097, 1098 (Ala. 2001). See also Scroggins v. State,827 So.2d 878 (Ala.Crim.App. 2001).
The disposition of the claims in Rumpel's petition depends on whether immigration consequences of a guilty plea are direct or collateral consequences. "`An accused is entitled to information concerning the direct consequences of his plea. He is not entitled to information concerning all collateral effects, or future contingencies that might arise.'" Fearson v. State, 662 So.2d 1225, 1226 (Ala.Crim.App. 1995) (quoting Minnifield v. State, 439 So.2d 190, 192 (Ala.Crim.App. 1983)).See also Brady v. United States, 397 U.S. 742, *Page 402 
755 (1970) (due process simply requires that the defendant understand the "direct consequences" of his plea).
 "`Collateral consequences of a guilty plea are many. They may include the loss of civil service employment, of the right to vote and travel freely abroad, of the right to a driver's license, and of the right to possess firearms.'
 "United States v. Del Rosario, 902 F.2d 55, 59
(C.A.D.C. Cir.), cert. denied, 498 U.S. 942 . . . (1990) (citations omitted). See also Polk v. State, 405 So.2d 758, 761-62 (Fla.Dist.Ct.App. 1981) (listing ineligibility for parole, loss of good time, and loss of rights of citizenship as collateral consequences of a guilty plea). `"The distinction between direct and collateral consequences of a plea `turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'"' State v. Ward, 123 Wn.2d 488, 869 P.2d 1062, 1075 (1994) (citations omitted) (emphasis added)."
Robinson v. State, 730 So.2d 252, 254 (Ala.Crim.App. 1998).
Rumpel acknowledges that the court in Oyekoya v. State, 558 So.2d 990,990 (Ala.Crim.App. 1989), rejected the petitioner's postconviction challenge of his guilty plea on the ground that his counsel was ineffective for failing "to inform him of the possibility of deportation as a result of his guilty plea." In addition to finding that the petitioner did not submit sufficient proof of the allegations of his petition, the court observed the following:
 "`[C]ounsel's failure to advise the defendant of the collateral consequences of a guilty plea, such as deportation, cannot rise to the level of constitutionally ineffective assistance.' United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985). See also United States v. Romero-Vilca, 850 F.2d 177, 179 (3rd Cir. 1988) ('[W]e hold that potential deportation is a collateral consequence of a guilty plea. Accordingly, we find no error in the sentencing court's failure to inform Romero-Vilca in the Rule 11[, Fed.R.Crim.P.,] Colloquy of his possible deportation.'); Annot., 10 A.L.R. 4th 8 (1981)."
558 So.2d at 990-91.
However, Rumpel contends that, since this ruling in Oyekoya, Congress has drastically altered immigration laws with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. See United States v. Amador-Leal,276 F.3d 511, 516 (9th Cir.) ("No doubt the landscape has changed, because it is now virtually certain that an aggravated felon will be removed."), cert. denied, 122 S.Ct. 1946 (2002). Rumpel asserts that these changes should compel this court to reexamine the ruling inOyekoya. He argues that, under the former federal immigration laws, he would have been eligible for relief from deportation, whereas he faces "virtually automatic" deportation under the laws enacted since Oyekoya. (Appellant's brief, p. 10.)[2]
In addition to pointing out that numerous states have enacted legislation requiring *Page 403 
that the trial court advise of the possible immigration consequences of a guilty or nolo contendere plea,[3] Rumpel relies on caselaw from other jurisdictions, including United States v. El-Nobani, 145 F. Supp.2d 906
(N.D.Ohio. 2001), which he quotes at length. However, the judgment in that opinion was reversed on appeal. 287 F.3d 417 (6th Cir. 2002). In reversing the district court, the United States Court of Appeals for the Sixth Circuit stated, in part:
 "Petitioner argues that his lack of awareness of the deportation consequences . . . make[s] his pleas involuntary and unknowing. A `defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea.' King v. Dutton, 17 F.3d 151, 153 (6th Cir. 1994).
 "Petitioner contends that deportation is not collateral because under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009 546, the INS has little if any discretion to grant deportation relief for those individuals like petitioner who are convicted of certain crimes. First, although the INS has been restricted in its ability to grant certain discretionary relief in deportation proceedings, `there is no indication that the INS has ceased making this sort of determination on a case-by-case basis.' Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 484 n. 8 . . . (1999). Second, the automatic nature of the deportation proceeding does not necessarily make deportation a direct consequence of the guilty plea. A collateral consequence is one that `remains beyond the control and responsibility of the district court in which that conviction was entered.' United States v. Gonzalez, 202 F.3d 20, 27
(1st Cir. 2000). While this Court has not specifically addressed whether deportation consequences are a direct or collateral consequence of a plea, it is clear that deportation is not within the control and responsibility of the district court, and hence, deportation is collateral to a conviction. United States v. Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988) ('[W]e hold that potential deportation is a collateral consequence of a guilty plea.'); United States v. Quin, 836 F.2d 654, 655 (1st Cir. 1988) ('[D]eportation in this context is generally regarded as a collateral consequence.'); United States v. Campbell, 778 F.2d 764, 767 (11th Cir. 1985) ('[D]eportation is a collateral consequence of a guilty plea.'); United States v. Russell, 686 F.2d 35, 39 (D.C. Cir. 1982) (`It has become well settled, however, that Rule 11[, Fed.R.Crim.P.,] does not require informing a defendant of the possibility of deportation.'). Thus, the fact that petitioner was unaware of the deportation consequences of his pleas does not make his pleas unknowing or involuntary."
287 F.3d at 421.
The court in United States v. Amador-Leal, 276 F.3d at 513, was presented with the question "whether immigration consequences are collateral, as [the court had previously] held in Fruchtman v. Kenton,531 F.2d 946 (9th Cir.), cert. denied, 429 U.S. 895 . . . (1976), or have become direct in light of the aggravated felony provisions of . . . AEDPA . . . and . . . IIRIRA . . ., such that a defendant must be advised of them *Page 404 
in order for his plea to be voluntary." The court had held, inFruchtman, like the court in El-Nobani, that deportation is a collateral consequence because it "`was not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility.'" 531 F.2d at 949 (quoting Michelv. United States, 507 F.2d 461, 465 (2d Cir. 1974)). In reaffirming this rationale and holding that neither Rule 11, Fed.R.Crim.P., nor due process requires that a defendant be advised of immigration consequences, the court in Amador-Leal reasoned as follows:
 "[W]hether an alien will be removed is still up to the INS. There is a process to go through, and it is wholly independent of the court imposing sentence. The Supreme Court has made this clear by describing deportation as a `purely civil action' separate and distinct from a criminal proceeding. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984). Removal is not part of the sentence; future immigration consequences do not bear on the `range of the defendant's punishment' imposed by the court, Torrey [v. Estelle], 842 F.2d [234,] 236 [(9th Cir. 1988)], and deportation is not punishment for the crime. See Lopez-Mendoza, 468 U.S. at 1038. . . . [I]mmigration consequences will not be felt until the court's sentence has been served, the INS assumes control of the defendant, and the process of removal has been initiated and executed. . . . In short, no matter what changes have been wrought by AEDPA and IIRIRA, removal remains the result of another governmental agency's subsequent actions.
". . . As the First Circuit explained:
 "`What renders the plea's immigration effects "collateral" is not that they arise "virtually by operation of law," but the fact that deportation is "not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility." However "automatically" [the defendant's] deportation — or administrative detention — might follow from his conviction, it remains beyond the control and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof.'
 "[United States v.] Gonzalez, 202 F.3d [20,] 27 [(1st Cir. 2000)] (quoting Fruchtman [v. Kenton, 531 F.2d 946
(9th Cir. 1976)]; internal cites to other cases reasoning the same way omitted). . . . We agree with this analysis, and reaffirm that our decision in Fruchtman remains good law in this circuit as well."
276 F.3d at 516-17. See also United States v. Gonzalez, 202 F.3d 20, 26
(1st Cir. 2000) ("collateral nature of deportation is not affected by [the 1996] expansion of the `aggravated felon' category, because the immigration consequences of a plea are collateral irrespective of the reason for which an alien is deemed deportable").
Other courts, having revisited the issue since the changes in immigration law, have reaffirmed their stance that the fact that deportation may result from a conviction is still a collateral consequence that does not bear on whether the defendant's guilty plea was knowing and voluntary. See, e.g., People v. Davidovich, 463 Mich. 446,618 N.W.2d 579 (2000); State v. Abdullahi, 607 N.W.2d 561 (N.D. 2000);State v. Desir, 766 A.2d 374 (R.I. 2001); Zigta v. Commonwealth,38 Va. App. 149, 562 S.E.2d 347 (2002).
An indication that this court still considers immigration consequences to be collateral *Page 405 
is our citing the ruling in Oyekoya in subsequent cases holding some other consequence to also be a collateral consequence. See, e.g.,Robinson v. State, 730 So.2d at 254 (application and effects of the Community Notification Act, §§ 15-20-21 to -24, Ala. Code 1975, are collateral consequences); Danzey v. State, 703 So.2d 1019, 1020
(Ala.Crim.App. 1997) (collection of DNA data is a collateral consequence).
Based on the foregoing, we find that Oyekoya is still the rule in Alabama: immigration consequences continue to be collateral consequences of a guilty plea and resulting conviction. Rumpel's attempt to distinguish prior caselaw is unpersuasive. Whether deportation is a possibility or "virtually automatic," the underlying collateral nature of deportation does not change: it remains an indirect consequence of a guilty plea. Pursuant to this rationale, we also reject Rumpel's assertion that due process and Rule 14.4 require that an alien defendant be advised of potential immigration consequences to ensure that his plea is knowing, voluntary, and intelligent.
It follows that trial counsel is not ineffective in failing to so advise a defendant. See United States v. Gonzalez; People v. Davidovich,463 Mich. at 453, 618 N.W.2d at 582; Barajas v. State, 115 Nev. 440,991 P.2d 474 (1999). See also United States v. Banda, 1 F.3d 354 (5th Cir. 1993). Compare United States v. Campbell, 778 F.2d 764, 768-69 (11th Cir. 1985) ("Counsel's affirmative misrepresentation in response to a specific inquiry from the defendant may, however, under certain circumstances, constitute ineffective assistance of counsel."); In reResendiz, 19 P.3d 1171, 1185 (Cal. 2001), and cases cited in n. 14. Cf.In re Yim, 139 Wn.2d 581, 989 P.2d 512 (1999) (the defendant may be entitled to relief if the trial court makes an affirmative misrepresentation on the matter).
Having so ruled, we nevertheless strongly encourage trial courts and defense counsel to ensure that an alien defendant is aware of the possible effects that a guilty plea and resulting conviction may have on his status in this country. See United States v. Amador-Leal, 276 F.3d at 517. See also United States v. Banda, 1 F.3d at 356 (counsel should advise his client on possible deportation even though such is not constitutionally required); United States v. Campbell, 778 F.2d at 769 ("It is highly desirable that both state and federal counsel develop the practice of advising defendants of the collateral consequences of pleading guilty; what is desirable is not the issue before us."). "[T]here is no question that immigration consequences of a conviction are important to aliens contemplating a plea." United States v. Amador-Leal, 276 F.3d at 517.
However, because immigration consequences are collateral, neither Rule 14.4, Rumpel's right to due process, nor his right to effective assistance of counsel was violated. Because taking the facts as stated in Rumpel's petition as true, he was not entitled to postconviction relief as a matter of law, and his petition was properly denied without an evidentiary hearing. Accordingly, the trial court's judgment is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, Shaw, and Wise, JJ., concur.
[1] Rule 14.4(a)(1), Ala.R.Crim.P., states that "the court shall not accept a plea of guilty without . . . [a]scertaining that the defendant has a full understanding of what a plea of guilty means and its consequences." The rule restates the due-process requirements of Boykinv. Alabama, 395 U.S. 238 (1969). See Committee Comments to Rule 14.4 ("Subsection (a)(1) requires a full colloquy to ensure that the defendant understands what the `plea connotes and . . . its consequence' as required by Boykin. . . .").
[2] We find the following appropriate for purposes of this appeal: "We need not define the federal immigration consequences of [the appellant's] guilty plea to the charge[s] . . . under state law, and we assume federal law subjects him to deportation and mandatory, indefinite detention because of the conviction resulting from his guilty plea." State v.Abdullahi, 607 N.W.2d 561, 566 (N.D. 2000).
[3] See n. 48 in Immigration Naturalization Service v. St.Cyr, 533 U.S. 289, 323 (2001), for a list of such statutes. *Page 908