KELLUM, Judge.
Jason Douglas McCary appeals the circuit court’s summary dismissal of his petition for postconviction relief, filed pursuant to Rule 32, Ala. R.Crim. P., in which he attacked his October 1, 2009, guilty-plea *1004 conviction for sodomy in the first degree and his resulting sentence, as a habitual felony offender, of life imprisonment. No direct appeal was taken from McCary’s guilty-plea conviction.
McCary timely filed this, his first, Rule 32 petition on September 24, 2010. In his petition, McCary alleged that his guilty plea was involuntary because, he said, he was never informed that under § 15-22-27.3, Ala.Code 1975, he would not be eligible for parole and, in fact, was affirmatively misinformed that if he entered into a plea agreement with the State and agreed to a sentence of life imprisonment, he would be eligible for parole. The State filed a response to McCary’s petition on February 1, 2011, in which the State averred that McCary’s claim was “belied by the Affidavit of his Trial Counsel,” a copy of which the State attached to its response, as well as by the written plea agreement and the “Explanation of Rights and Plea of Guilty” form — better known as an Ireland[1] form — signed by McCary. (C. 23.) On February 14, 2011, the circuit court issued an order summarily dismissing McCary’s petition, finding that the petition was meritless and that it failed to state a claim upon which relief could be granted.
On appeal, McCary reasserts the claim raised in his petition — he argues that his guilty plea was involuntary because, he says, he was never informed that because of the nature of the offense he was not eligible for parole but was, in fact, affirmatively misinformed that he would be eligible for parole.[2] The crux of McCary’s claim is that, under the circumstances of his case, his ineligibility for parole under § 15-22-27.3, Ala.Code 1975, was a direct consequence of his guilty plea and that he should have been so informed because the effect of § 15-22-27.3 was to increase the maximum sentence that he could receive, as well as the actual sentence that he did receive, from life imprisonment to life imprisonment without the possibility of parole. The State agrees — it concedes on appeal that, under the circumstances in this case, McCary was entitled to be informed that he would not be eligible for parole in order for his guilty plea to be voluntary. The State also concedes that McCary was never informed that he was ineligible for parole, and that, as a result, his guilty plea was involuntary and he is entitled to relief.
Section 15-22-27.3 provides that “[a]ny person convicted of a criminal sex offense involving a child as defined in subdivision (5) of Section 15-20-21 which constitutes a Class A or B felony shall not be eligible for parole.” Section 15-20-21(5), Ala.Code 1975, defines a “criminal sex offense involving a child” as “[a] conviction for any criminal sex offense in which the victim was a child under the age of 12 and any offense involving child pornography.” There is no dispute that McCary falls within the ban on parole contained in § 15-22-27.3 because he pleaded guilty to a Class A felony sex offense — sodomy in the first degree[3] — and the victim of his crime was under 12 years of age. Therefore, McCary was not eligible for parole and, as a result, his sentence of life imprisonment imposed by the trial court was, in reality, a sentence of life imprisonment without the possibility of parole.
The dispositive issue before this Court is whether the trial court was re- *1005 quired to inform McCary that he was ineligible for parole under § 15-22-27.3 in order for McCary’s guilty plea to be voluntary. We begin our analysis with the simple and well settled principle that “due process requires that [a guilty] plea be a voluntary, knowing, and intelligent act ‘done with sufficient awareness of the relevant circumstances and likely consequences.’ ” Smith v. State, 494 So.2d 182, 182 (Ala.Crim.App.1986) (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). To that end, a trial court is required to “conduct a colloquy with the defendant before accepting a guilty plea [to] ensure[ ] that a criminal defendant is adequately advised of his rights so that he may make a voluntary and intelligent decision to enter such a plea.” Heard v. State, 687 So.2d 212, 213 (Ala.Crim.App.1996). See also Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Rule 14.4(a), Ala. R.Crim. P., specifically provides:
“(a) Colloquy With Defendant. In all minor misdemeanor eases, the execution of a form similar to Form C-44B will be sufficient and no colloquy shall be required. In all other cases, except where the defendant is a corporation or an association, the court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for the purposes of:
“(1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands:
“(i) The nature of the charge and the material elements of the offense to which the plea is offered;
“(ii) The mandatory minimum penalty, if any, and the maximum possible penalty provided by law, including any enhanced sentencing provisions;
“(iii) If applicable, the fact that the sentence may run consecutively to or concurrently with another sentence or sentences;
“(iv) The fact that the defendant has the right to plead not guilty, not guilty by reason of mental disease or defect, or both not guilty and not guilty by reason of mental disease or defect, and to persist in such a plea if it has already been made, or to plead guilty;
“(v) The fact that the defendant has the right to remain silent and may not be compelled to testify or give evidence against himself or herself, but has the right, if the defendant wishes to do so, to testify on his or her own behalf;
“(vi) The fact that, by entering a plea of guilty, the defendant waives the right to trial by jury, the right to confront witnesses against him or her, the right to cross-examine witnesses or have them cross-examined in the defendant’s presence, the right to testify and present evidence and witnesses on the defendant’s own behalf, and the right to have the aid of compulsory process in securing the attendance of witnesses;
“(vii) The fact that, if the plea of guilty is accepted by the court, there will not be a further trial on the issue of the defendant’s guilt; and
“(viii) The fact that there is no right to appeal unless the defendant has, before entering the plea of guilty, expressly reserved the right to appeal with respect to a particular issue or issues, in which event appellate review shall be limited to a determination of the issue or issues so reserved; and
*1006 “(2) Determining that the plea is voluntary and not the result of force, threats, or coercion, nor of any promise apart from the plea agreement that has been disclosed to the court as provided in Rule 14.3(b); and
“(3) Giving the defendant an opportunity to state any objections he or she may have to defense counsel or to the manner in which defense counsel has conducted or is conducting the defense.”
Although “[a]n accused is entitled to information concerning the direct consequences of his plea[, h]e is not entitled to information concerning all collateral effects, or future contingencies that might arise.” Minnifield, v. State, 439 So.2d 190, 192 (Ala.Crim.App.1983). See also Rumpel v. State, 847 So.2d 399 (Ala.Crim.App.2002); Bennett v. State, 754 So.2d 637 (Ala.Crim.App.1999); Robinson v. State, 730 So.2d 252 (Ala.Crim.App.1998); Danzey v. State, 703 So.2d 1019 (Ala.Crim.App.1997); and Fearson v. State, 662 So.2d 1225 (Ala.Crim.App.1995). “The distinction between direct and collateral consequences of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant’s punishment.” Robinson, 730 So.2d at 254 (internal quotations and citations omitted; emphasis added). Generally, parole eligibility has been considered to be a collateral consequence of a plea of guilty, about which a defendant does not have to be informed. See, e.g., Rumpel, 847 So.2d at 402 (parole eligibility, good time, and loss of rights of citizenship are collateral consequences of a guilty plea (citing Polk v. State, 405 So.2d 758 (Fla.Dist.Ct.App.1981))). However, recently, in Frost v. State, 76 So.3d 862 (Ala.Crim.App.2011), this Court addressed whether Frost’s trial counsel was ineffective for not advising him that, if he pleaded guilty to one count of sodomy in the first degree and two counts of sexual abuse of a child under 12 years of age, he would be ineligible for parole under § 15-22-27.3. In concluding that counsel was ineffective for not advising Frost of his ineligibility for parole, this Court held that, under the circumstances in Frost’s case — where Frost was sentenced to life imprisonment for the sodomy conviction, and § 15-22-27.3 operated to increase Frost’s “period of incarceration” from life imprisonment to life imprisonment without the possibility of parole — Frost’s ineligibility for parole “was a direct consequence of his plea of guilty.” 76 So.3d at 868.
The reasoning behind this holding is clear: “ ‘The accused’s right to know the possible sentence he faces is absolute,’ ” Bozeman v. State, 686 So.2d 556, 559 (Ala.Crim.App.1996) (quoting Henry v. State, 639 So.2d 583, 584 (Ala.Crim.App.1994)), and “the trial court’s failure to correctly advise a defendant of the minimum and maximum sentences before accepting his guilty plea renders that guilty plea involuntary.” White v. State, 888 So.2d 1288,1290 (Ala.Crim.App.2004).
“The Alabama Supreme Court and this Court ‘have consistently held that a defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea.’ Ex parte Rivers, 597 So.2d 1308, 1309 (Ala.1991). It is well settled, moreover, that ‘if the appellant’s sentence could be enhanced under any of the enhancement statutes, the appellant should be informed of the additional sentence he could receive under the applicable enhancement statute.’ Elrod v. State, 629 So.2d 58, 59 (Ala.Cr.App.1993), citing Rivers. Accord, White v. State, 616 So.2d 399 (Ala.Cr.App.1993); Looney v. State, 563 So.2d 3, 4 (Ala.Cr.App.1989); *1007 Smith v. State, 494 So.2d 182 (Ala.Cr.App.1986).”
Aaron v. State, 673 So.2d 849, 849-50 (Ala.Crim.App.1995). See also Durr v. State, 29 So.3d 922 (Ala.Crim.App.2009); and Riley v. State, 892 So.2d 471 (Ala.Crim.App.2004).
Although § 15-22-27.3 is not a sentence-enhancement statute but is a parole statute, its effect, in circumstances such as those in Frost and in this case, is to increase the maximum possible sentence from life imprisonment to life imprisonment without the possibility of parole; thus, parole ineligibility under § 15-22-27.3 must be considered a direct consequence of a guilty plea, of which a defendant is entitled to be informed. Therefore, we hold that when the effect of parole ineligibility under § 15-22-27.3 is to increase the maximum sentence a defendant faces upon pleading guilty, a trial court must inform a defendant of his or her parole ineligibility under § 15-22-27.3 and the effect of that ineligibility on the maximum sentence, and the failure to do so will render the plea involuntary.
This is not to say that in all circumstances a defendant must be advised of his or her ineligibility for parole under § 15-22-27.3. A sentence of a term of years is fundamentally different than a sentence of life imprisonment. Ineligibility for parole under § 15-22-27.3 when the maximum sentence a defendant could receive is a term of years will not have the effect of increasing that maximum sentence, as is the case when the maximum sentence a defendant could receive is life imprisonment. In addition, although a sentence of life imprisonment implies that a defendant will be considered for parole, this Court has held that the same conclusion does not necessarily follow when the sentence is one of a term of years. See Moore v. State, 739 So.2d 536, 538 (Ala.Crim.App.1998) (“[T]he ordinary sentence of ‘life’ under the [Habitual Felony Offender Act] requires parole consideration, because had the legislature desired to bar parole consideration ... it would have referred to ‘life without parole’ as it did in § 13A-5-9(c)(3). However, we cannot presume that the legislature intended the same conclusion when referring in the [Habitual Felony Offender Act] to a sentence for a term of years.”). Therefore, only when the effect of parole ineligibility under § 15-22-27.3 is to increase the maximum sentence a defendant could receive is the defendant entitled to be informed of his or her parole ineligibility.
Having determined that the trial court had a duty to inform McCary of his ineligibility for parole under § 15-22-27.3 in order for McCary’s guilty plea to be voluntary, we must remand this case for further proceedings. McCary alleged in his petition that his guilty plea was involuntary because, he said, he was never informed that he was ineligible for parole under § 15-22-27.3. There is no dispute here that McCary’s claim is not precluded by any of the provisions in Rule 32.2. See, e.g., Gilmore v. State, 937 So.2d 547, 550 (Ala.Crim.App.2005) (“A challenge to the voluntariness of a guilty plea may be presented for the first time in a timely filed Rule 32 petition.”). In addition, his claim was sufficiently pleaded to satisfy the requirements in Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P., and, if true, would entitle McCary to relief.
Although in the circuit court the State asserted that McCary’s claim was refuted by trial counsel’s affidavit, the written plea agreement, and the Ireland form, a review of those documents reveals that that is not, in fact, the case. None of those documents actually addresses McCary’s claim that he was never informed that he was ineligible for parole *1008 under § 15-22-27.3 and that the effect of that ineligibility would be to increase the maximum sentence he could receive from life imprisonment to life imprisonment without the possibility of parole. In her affidavit, trial counsel stated, in pertinent part:
“On October 1, 2009, [McCary] appeared in the Madison County Circuit Court for his scheduled trial date. At that time, he was informed by counsel of a plea offer proposed by the prosecutor of the Madison County District Attorney’s Office. The plea offer was fully explained to [McCary]. Next, [McCary] was again informed of the sentencing range of the Sodomy 1st offense in consideration of his prior criminal offenses (life imprisonment or any term not less than 99 years), and he was informed that if he went to trial, this would be his sentencing range in the result of a guilty verdict.”
(C. 25.) At no point in her affidavit did trial counsel specifically address what information McCary received regarding his parole eligibility. Similarly, the Ireland form states that McCary agreed to plead guilty to sodomy in the first degree, a Class A felony, and that, as a habitual offender with two prior felony convictions, he could receive a sentence of life imprisonment or of any term of not less than 99 years’ imprisonment. The written plea agreement also indicates that McCary agreed to plead guilty to first-degree sodomy as a habitual offender in return for a sentence of life imprisonment. However, neither of those documents mention McCary’s ineligibility for parole under § 15-22-27.3 or its effect of increasing the maximum sentence McCary could, and did, receive to life imprisonment without the possibility of parole. Thei’efore, none of the documents submitted by the State in the circuit court actually refutes McCary’s claim. Unrefuted allegations in a postcon-viction petition must be accepted as true. See, e.g., Ex parte Hodges, [Ms. 1100112, August 26, 2011] — So.3d — (Ala.2011); Archie v. State, 6 So.3d 566 (Ala.Crim.App.2008); Poole v. State, 988 So.2d 604 (Ala.Crim.App.2007); and Thomas v. State, 908 So.2d 308 (Ala.Crim.App.2004).
We also note that, although the State concedes on appeal that McCary was never informed of his ineligibility for parole, and, in fact, requests that we grant McCary the relief he requests (as opposed to remanding the case for further proceedings), the State’s concession is based entirely on an attachment to McCary’s brief on appeal — an attachment containing a purported, but uncertified, transcript of McCary’s guilty-plea colloquy. Unlike the parties on appeal, however, “[t]his Court is bound by the record on appeal and cannot consider facts not contained in the record.” Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala.Crim.App.2004). “[Attachments to briefs are not considered part of the record and therefore cannot be considered on appeal.” Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991). A transcript of the guilty-plea colloquy is not contained in the record before this Court. In addition, because McCary did not appeal his conviction and sentence, the transcript is not otherwise available for us to review. We cannot consider the attachment to McCary’s brief in analyzing his claim. Therefore, based on the record before us, we cannot definitively say that McCary is entitled to relief. We can say only that McCary has pleaded facts that, if true, will entitle him to relief and that, therefore, he is entitled to an opportunity to prove those alleged facts.
Based on the foregoing, we remand this case for the circuit court to allow McCary an opportunity to present evidence establishing that the trial court did not inform him, at the time he entered his plea, that he was ineligible for parole under § 15-22-27.3 and that, therefore, his guilty plea was *1009 involuntary. The court shall either conduct an evidentiary hearing or accept evidence in the form of affidavits, written interrogatories, or depositions. See Rule 32.9(a), Ala. R.Crim. P. After receiving and considering the evidence presented, the circuit court shall issue specific written findings of fact regarding McCary’s claim. If the circuit court determines that McCary was not informed by the trial court, at the time of his plea, that he was ineligible for parole under § 15-22-27.3, the court shall grant McCary relief. If, on the other hand, the circuit court determines that McCary was indeed informed by the trial court that he was ineligible for parole under § 15-22-27.3, the court shall so state in its written findings. Due return shall be filed with this Court within 63 days of the date of this opinion and shall include a transcript of the guilty-plea colloquy, the circuit court’s written findings of fact, a transcript of the evidentiary hearing, if one is conducted, and any other evidence relied on by the circuit court in making its findings.
REMANDED WITH DIRECTIONS. *
WELCH, P.J., and WINDOM, BURKE, and JOINER, JJ., concur.

. See Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971).

. McCary splits this claim into three separate issues on appeal. However, all three issues are simply a variation on the singular claim raised in his petition.

.Sodomy is a criminal sex offense pursuant to § 15-20-21(4)b., Ala.Code 1975.

 Note from the reporter of decisions: On April 13, 2012, on return to remand, the Court of Criminal Appeals dismissed the appeal, without opinion.