Bryon Keith Brown was convicted of trafficking in cocaine, a violation of § 13A-12-231 Ala. Code. 1975. He was subsequently sentenced to 30 years in the penitentiary and was assessed a fine of $50,000. Brown raises 13 issues on appeal.
 I.
Brown's first argument is that the trial court improperly consolidated his case with that of a codefendant. This argument has not been preserved for our review.
On February 15, 1995, the trial court issued an order granting the State's motion to consolidate the case with another trafficking *Page 316 
case against Brown's wife, Pamela Brown. The order notified Brown that he had 10 days to file an objection to the consolidation. He did not file an objection within the 10 day period or at any other time during the course of his trial. This court has held that claims regarding the consolidation of related cases must be raised at trial to be eligible for appellate review. See, e.g., Thomas v. State, 587 So.2d 1248
(Ala.Cr.App. 1991); Walker v. State, 594 So.2d 722
(Ala.Cr.App. 1991).
 II.
Three of Brown's arguments on appeal arise from an incident in which he was found to be in contempt of court during trial for failing to reveal the identity of another individual. (R. 219-22.) The court sentenced Brown to three months in jail and raised his bond from $1,500 to $100,000 as a result of the contempt citation. Brown argues that: (1) the trial judge erred in that he became an advocate for the State; (2) the trial judge erred in citing him for contempt in the presence of the jury; and (3) the trial judge improperly revoked the conditions of his release by raising his bond without a hearing, without proper notice, and without an opportunity to defend. None of these objections were raised at trial.
 "Review on appeal is limited to a consideration of questions properly raised in the trial court. Knox v. State, 38 Ala. App. 482, 87 So.2d 671
(1956); Handley v. State, 214 Ala. 172, 106 So. 692
(1926). Matters not objected to in the trial court cannot be considered for the first time on appeal since review on appeal is limited to those matters on which rulings are invoked at nisi prius. Daniels v. State, 53 Ala. App. 666, 303 So.2d 166 (1974); Shiver v. State, 49 Ala. App. 615, 274 So.2d 644
(1973); Cooper v. State, Ala. App., 331 So.2d 752, cert. denied, Ala., 331 So.2d 759 (1976)."
Harris v. State, 347 So.2d 1363, 1367 (Ala.Cr.App. 1977), cert.denied, 347 So.2d 1368 (emphasis in original). None of these arguments regarding the trial court's contempt citation have been preserved for our review.
 III.
Brown argues that the trial court improperly permitted the prosecutor to comment on his exercise of his right to remain silent following arrest. The following portion of the record from the redirect examination of Officer Gary Jenkins is relevant to our determination of this issue:
 "Q: [By Mr. Valeska, for the State] Now, Mr. McCain asked you if, at the time his client said the cocaine was his and not his wife's, when you tested the Inositol[1] bottle in front of them, did the defendant make any statements about that?
"A: He refused to give a statement.
 "MR. McCAIN [Brown's attorney] Judge, I'm going to object at this point. Mr. Valeska is trying to draw [an] inference that my client exercised his constitutional right to remain silent. And I'm going to move for a mistrial right now.
"THE COURT: Overruled."
(R. 115-16.)
A review of the record shows that, before Mr. Valeska asked the above question, defense counsel had asked the same witness a series of questions emphasizing the fact that Brown had not claimed responsibility for the Inositol to the police.
 "Q. [Defense counsel] Now, the statement that the defendant made was, generally speaking, 'I know about the cocaine; my wife knows nothing about it'?
"A. That's correct.
 "Okay. At that time, the bottle of Inositol had not been found, had it?
"A. Had not.
 "Q. At that time, he didn't say one word about Inositol, did he?
"A. Did not."
(R. 100.)
 "Q. He didn't say, 'I know about the cocaine in that bottle of Inositol in there,' did he?
"A. He did not. *Page 317 
 "Q. He didn't refer to that Inositol at all, did he?
"A. No."
(R. 101.)
 "Q. Okay. But on the way back, you asked him if he knew anything about it and he said 'no,' didn't he?
 "A. I don't remember asking him about nothing in the car.
"Q. You asked him. You don't recall that?
"A. No.
 "Q. But you don't recall the conversations about the cocaine. You just don't recall whether or not he said he knew about the Inositol?"
(R. 103.)
We hold that the trial court's denial of the appellant's motion for a mistrial was not error because defense counsel had already elicited the same information in prior questioning.
 IV.
Brown argues that the State failed to establish a proper chain of custody as to the cocaine that was seized and subsequently introduced as evidence in his trial. This argument has not been preserved for our review because no objection was raised at trial. Harris, supra.
 V.
Brown argues that the trial court erred in allowing the prosecution to question him regarding collateral bad acts. Specifically, he says the court erred in allowing the State to question him as to whether he was living with a woman other than his wife when he was arrested on trafficking charges.
Brown stated, on direct examination by defense counsel, that the only reason that he claimed ownership of the cocaine seized by the police was to protect his wife and child. (R. 204.) The following portion of the record from the cross-examination of Brown is the subject of his argument:
 "Q: [Mr. Valeska] You were still married to Pamela Brown, and you mentioned earlier in your direct examination that you said you wanted to claim the cocaine, it was yours, to protect her and her child. Is that what you said? You did, didn't you?
 "A: [Brown] The statement I made was, I told the officer that she didn't have anything to do with it.
"Q: That the cocaine was yours?
"A: I don't remember making that statement.
 "Q: All right. You remember telling the jury yesterday, when you testified sometime after five o'clock, the reason you said you did that [was] because you wanted to be a man, and then second, because she was crying and upset.
"A: Yes I said that.
 "Q: Okay. Now my question is that you were concerned about your wife's child; right?
"A: My child.
 "Q: Your child? But you were still married and sleeping or going around with other women at the time you were married to Pamela Brown?
 "MR. McCAIN: Judge, I'm going to object. Judge, I object. Can I have my objection, Mr. Valeska?
"MR. VALESKA: Judge, can I finish my question?
 "THE COURT: Mr. McCain, keep your voice down. He's not even through with his question.
"MR. McCAIN: I realize that, but I had to object.
"THE COURT: If you raise your voice again —
 "MR. McCAIN: Well, I thought if the question was objectionable, I could cut it off with my objection.
 "THE COURT: Overruled. This is not going to happen again.
 "MR. McCAIN: For the record, my objection is relevance.
 "THE COURT: Objections are not given until the question is through. Same for you. If Mr. Valeska gives an objection before you're through, same thing.
"MR. McCAIN: Okay. *Page 318 
 "THE COURT: You have to have a full question on the record, and my court reporter can't hear everything when y'all are going at it like this.
"MR. McCAIN: I apologize, Judge.
"THE COURT: Okay, overruled.
"Q: You can answer the question.
 "A: As I said, I was staying with my girlfriend and family members.
 "Q: Yes, sir, but my question, once again is, you were staying with your girlfriend; correct?
"A: Yes, I did. "(R. 223-26.)
" 'Even if the accused has not introduced evidence of good character for the purpose of proving his innocence, the State may impeach him the same as they might impeach any other witness.' " Lundy v. State, 568 So.2d 399 (Ala.Cr.App. 1990) (quoting, C. Gamble, McElroy's Alabama Evidence, § 165.01(2) (3d ed. 1977)). "An act of a witness which is inconsistent with the witness' present testimony about a material matter is a self-contradiction and, as such, is provable for purposes of impeachment." C. Gamble, McElroy's Alabama Evidence, § 155.02(3) (5th ed. 1996). See e.g., Lundy v. State, supra
(allowing testimony of two witnesses that defendant had shown them a police badge or police identification after defendant testified on direct examination that he had never owned a police badge or police identification); Willis v. State,449 So.2d 1258 (Ala.Cr.App. 1984) (allowing introduction of prior misdemeanor conviction for carrying a pistol after defendant stated on direct examination that he had never carried a pistol).
A major aspect of Brown's defense was that he confessed to something he did not do out of a sense of duty to his wife and child. The State's questions were specifically intended to impeach Brown's testimony regarding his sense of duty to his family. The fact that Brown was living with someone other than his wife at the time of his arrest contradicts his testimony regarding the reasons behind his confession. Although the State's line of questioning ventures dangerously close to the category of questions that we have, in the past, held to be overly prejudicial to the defendant, we will not reverse the trial court's judgment in this case based upon the above facts in the record. We find that the court did not err in overruling Brown's objections to the questions designed to impeach his earlier testimony.
 VI.
Brown argues that the State failed to prove a prima facie case of trafficking in cocaine. As a basis for his argument, Brown maintains that the State did not prove that he was in possession of "28 grams or more of cocaine or of any mixture containing cocaine." Ala. Code 1975, § 13A-12-231(2). Brown argues that he was not properly convicted of trafficking because, he argues, the actual amount of pure cocaine in his possession was less than 28 grams; the cocaine, he says, was mixed with other substances, so that the total weight exceeded 28 grams.
Brown makes this argument for the first time on appeal. At trial, Brown moved for a judgment of acquittal, arguing that the State failed to prove that he had knowledge that there was cocaine residue in the bottle of Inositol. No argument was advanced as to whether it was proper for the cocaine to be weighed along with any substances with which it was found to be mixed. "The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith,526 So.2d 880, 882 (Ala. 1987); see also, McElroy v. State,611 So.2d 431, 433 (Ala.Crim.App. 1992). This argument has not been preserved for our review.
 VII.
Brown contends that the trial court committed several errors in its jury instructions. Brown argues that the trial court improperly identified jury instructions as having been submitted by the defense during re-instruction of the jury. Brown also argues that, during the re-instruction, the trial judge improperly stated that he had rejected some requested jury charges submitted by the defense and made an improper comment as to the evidence. Additionally, Brown argues that the trial court's charge during the re-instruction of the jury as to the elements of *Page 319 
trafficking in cocaine was incomplete, inaccurate, and confusing.
Our review of the record indicates that Brown raised no objections on these grounds at any point during the court's reinstruction of the jury.
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
Ala. R.Crim. P., Rule 21.2. Since no objection was made as to any of Brown's arguments regarding the jury's instruction or reinstruction, none of the arguments has been preserved for appellate review.
 VIII.
Brown argues that the trial judge improperly allowed a copy of the indictment against him to be taken into the jury deliberation room. Our review of the record shows that no objection on this ground was raised at trial. This argument has not been preserved for our review. Harris at 347 So.2d 1363
(Ala.Cr.App. 1977).
 IX.
Brown argues that he received ineffective assistance of counsel at trial. He contends that trial counsel was ineffective in: (1) failing to object to the consolidation of his trial with that of his wife; (2) failing to file a timely request for an independent lab test of evidence seized by the State; (3) failing to object to the admission of field test data; (4) failing to object to his being held in contempt of court for refusing to testify as to another person's identity; (5) failing to object to an allegedly insufficient chain of custody for evidence; and (6) failing to object to certain jury charges.
The law governing whether a defendant received ineffective assistance of trial counsel is clear:
 "Ineffective assistance of counsel claims are judged according to the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffectiveness claim, the petitioner must establish both that his counsel's performance was deficient and that he was prejudiced as a result of the deficiency. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under 'prevailing professional norms,' was 'reasonable considering all the circumstances.' 466 U.S. at 688, 104 S.Ct. at 2065
 "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall 'outside the wide range of professionally competent assistance.' 466 U.S. at 690, 104 S.Ct. at 2066. Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' 466 U.S. at 694, 104 S.Ct. at 2068."
Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App.), cert.denied, id. (Ala. 1994), cert. denied, 514 U.S. 1024,115 S.Ct. 1375, 131 L.Ed.2d 230 (1995).
 A.
Two of Brown's arguments, that counsel failed to object to consolidation of his case and that counsel failed to object to certain jury charges (Items (1) and (6) above), were not preserved for our review. Both arguments have been raised for the first time on appeal. Neither argument was made in the appellant's motion for a new trial or at the hearing on the motion for a new trial. "[W]e will not make exception to the rule that a claim for ineffective assistance of counsel may not be considered on appeal if it was not first presented to the trial court." *Page 320 Ex parte Jackson, 598 So.2d 895, 897 (Ala. 1992), overruled onother grounds, Ex parte Ingram, 675 So.2d 863, 865 (Ala. 1996).
 B.
Brown argues that his trial counsel was ineffective in failing to make a timely request for lab tests to determine the amount of pure cocaine that was contained in the mixture of cocaine and Inositol seized by the police. Brown argues that the tests were necessary to determine whether he was in possession of 28 or more grams of cocaine, the amount necessary to support a trafficking conviction. Brown contends that there was less than 28 grams of pure cocaine in the mixture and that the results of those tests would have absolved him of guilt on the trafficking charge. We find Brown's argument that trial counsel was ineffective in this regard without merit.
Even if Brown's trial counsel had requested lab tests to determine the amount of pure cocaine in the cocaine-Inositol mixture, there is not a reasonable probability that the outcome of the trial would have been any different. The statute under which Brown was indicted and convicted reads in part:
 "(2) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in Section 20-2-25(1), is guilty of a felony, which felony shall be known as 'trafficking in cocaine.' "
§ 13A-12-231, Ala. Code 1975. (emphasis added) This court has interpreted the "mixture" language of the trafficking statute to mean that the 28 grams would include the weight of the cocaine along with any substances with which it is mixed. See,e.g., Lyons v. State, 455 So.2d 295, 296-297 (Ala.Cr.App. 1984);Alleyne v. State, 568 So.2d 305, 306 (Ala.Cr.App. 1989), cert.quashed, 568 So.2d 305 (Ala. 1990) (holding that as long as there are more than 28 grams of substance, it is sufficient if any portion of the mixture contains cocaine). Alabama law does not require that there be 28 grams or more of pure cocaine in the mixture in order to be convicted of trafficking. The record indicates that approximately 60 grams of a mixture containing cocaine were seized from Brown's apartment. (R. 146.)
Brown's trial counsel did not render ineffective assistance of counsel in failing to order the lab tests of the mixture seized.
 C.
Brown also argues that the failure of his trial counsel to object to a police officer's testimony regarding field tests performed upon the evidence seized amounted to ineffective assistance of counsel. Brown contends that the evidence of the field tests was inadmissible because, he says, an improper predicate was established to introduce the results.
We find that the failure of Brown's trial counsel to object to the results of the field tests did not constitute ineffective assistance of counsel as contemplated inStrickland. Brown contends that the issue of admissibility of the field tests was not preserved for appeal because no objection was entered. However, he has not shown any way in which the police officer's testimony was so prejudicial that the outcome of the trial would have been different had it been excluded. The police officer's testimony was not the only evidence at trial that Brown was in possession of cocaine. In addition to the police officer's testimony, there was extensive testimony as to separate laboratory tests that revealed the presence of cocaine in evidence seized from Brown's apartment. (R. 130-158.) The outcome of the trial was not affected by the trial counsel's failure to object; we will not reverse the judgment of the trial court on this ground.
 D.
Brown contends that his trial counsel was ineffective in failing to object when he was cited for contempt of court. Our review of the record shows that any prejudice Brown suffered was the result of his own refusal to follow the trial court's instructions. His trial counsel was not ineffective *Page 321 
for failing to object to the trial court's finding him in contempt of court.
 E.
Brown argues that his trial counsel was ineffective for failing to object to evidence as to which, he says, the State had not established the chain of custody. Brown neither specifies what evidence he is alluding to in his appeal brief (at the hearing on the motion for a new trial he discussed the chain of custody of the bottle of Inositol (S.R. 94.)), nor alleges that any evidence has been tampered with.
Our review of the record with regard to the chain of custody of the bottle of Inositol reveals that it was accounted for at every stage — from its seizure until the time it was introduced as evidence. Brown also make no allegations that the evidence was tampered with in any fashion. Brown's argument that his trial counsel was ineffective for failing to object to the chain of custody of evidence is without merit.
We conclude that Brown's counsel was not ineffective. SeeStrickland.
 X.
Brown alleges that the trial court erred in denying his request for a continuance in order to secure the results of an independent laboratory analysis. His request for a continuance was filed two days before trial and after he had announced that he was "ready for trial" at a docket call. (R. 20.)
It is well established that the trial court's determination of whether to grant a motion for a continuance is within its discretion and its determination will not be overruled absent an abuse of discretion. Ex parte Saranthus, 501 So.2d 1256
(Ala. 1986).
 "If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923)."
501 So.2d at 1257 (emphasis added).
In the instant case, Brown cannot be said to have exercised due diligence to secure the results of independent laboratory tests before trial. His trial counsel had been appointed for over a month before the continuance was requested. Additionally there is nothing in the record to suggest that the results of the independent tests would have been any different than the tests performed by the State. Brown's request for a continuance was found by the trial court to be merely a delay tactic. The trial court did not abuse its discretion in denying Brown's request for a continuance.
For the above-stated reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Inositol is a chemical frequently used by drug dealers to dilute or "cut" cocaine in order to increase market value. *Page 507