Rodney Danzey was convicted of unlawful possession of a controlled substance after entering a guilty plea. He contends that his guilty plea was not voluntarily and knowingly entered because, he says, he was not informed that after he was convicted of that felony the State would be entitled to take a DNA sample pursuant to § 36-18-24, Ala. Code 1975. This Code section provides that all persons convicted of a felony after May 6, 1994, are required to submit to DNA testing. He also contends that his plea was involuntary because, he says, the lack of the information that he would be subjected to DNA testing prevented his being correctly informed of the possible maximum and minimum sentence. No objection was raised at trial on these grounds. "[C]laims relating to the voluntariness of guilty pleas must first be presented to the trial court or they are waived on direct appeal." Anderson v.State, 668 So.2d 159, 162 (Ala.Cr.App. 1995). Therefore, Danzey's claim is not reviewable on appeal.
Moreover, even had the issue been preserved, the DNA testing requirement of § 36-18-24 is not part of the sentence. The act that proposed the Alabama DNA Database System became effective on May 6, 1994. That act is codified at §§ 36-18-20
through -39, Ala. Code 1975. In the act, the legislature specifically found that law enforcement officers and agencies needed to have available the "latest scientific technology" in their fight against the growing incidence of violent crime, which is often committed by habitual offenders. See § 36-18-20, *Page 1020 
Ala. Code 1975. The DNA database is a "system established by the Director of the Alabama Department of Forensic Sciences for collecting, storing, and maintaining DNA records." §36-18-21(g), Ala. Code 1975. The DNA database is maintained for law enforcement use, identification research and protocol development of DNA forensic methods, identification of human remains after natural and mass disasters, and other humanitarian purposes. See, § 36-18-24, Ala. Code 1975. Collection of DNA data is a collateral consequence of Danzey's conviction and has no bearing on the sentence imposed. It is, in essence, a means of "fingerprinting" a convicted felon. " 'An accused is entitled to information concerning the direct consequences of his plea. He is not entitled to information concerning all collateral effects, or future contingencies that might arise.' " Fearson v. State, 662 So.2d 1225, 1226
(Ala.Cr.App. 1995) (quoting Minnifield v. State, 439 So.2d 190,192 (Ala.Cr.App. 1983) ("[w]e do not consider that ineligibility to earn CIT is a direct consequence of a guilty plea as to which a defendant must be advised before entering a plea"));Oyekoya v. State, 558 So.2d 990, 991 (Ala.Cr.App. 1989) (" '[W]e hold that potential deportation is a collateral consequence of a guilty plea. Accordingly, we find no error in the sentencing court's failure to inform Romero-Vilca in the Rule 11 Colloquy of his possible deportation.' ") (quoting United States v.Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988)); Minnifield v.State, 439 So.2d 190, 192 (Ala.Cr.App. 1983).
Based on the above, the appellant's conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.