LONG, Presiding Judge.
The appellant, James Edward Wells, was convicted of attempted murder, see §§ 13A-4-2 and 13A-6-2, Ala.Code 1975, and of assault in the first degree, see § 13A-6-20, Ala.Code 1975. Upon application of. the Habitual Felony Offender Act, Wells was sentenced to life imprisonment without parole for the attempted murder conviction and to life imprisonment for the assault conviction. This opinion consolidates the issues Wells raised on direct appeal and on appeal from the trial court’s denial of his Rule 32 petition for postconviction relief.
I.

Issue on Direct Appeal

Wells contends that the trial court erred in denying his motion for a judgment of acquittal in which he challenged the sufficiency of the evidence to sustain his conviction for attempted murder.[1]
At trial, Eric Sturdivant, a 1994 graduate of Phillips High School in Birmingham, testified that at around ,1:00 p.m. on March 22, 1995, he was playing basketball with some friends on a court located across the street from the high school. According to Sturdivant, when the game was over, *414 sometime between 2:00 p.m. and 3:00 p.m., he and his friends began smoking marijuana, which he had purchased earlier that day. Sturdivant stated that shortly after he and his friends began smoking the marijuana, Wells and Anthony Brown approached the basketball court, pulled out guns, said, “What’s up now, fucker?” and started shooting at him and his friends. (R. 56.) Sturdivant and his friends ran to a friend’s house; no one was injured in the shooting.
Sturdivant testified that he had gotten into an argument with Wells earlier that day at a community center located near the high school. He stated that he had purchased the marijuana from someone at the community center and that Wells had demanded that he give him half of the marijuana, but he had refused his demand.
Sturdivant testified that approximately five minutes after the shooting incident on the basketball court, he and his friends walked back toward the high school and were “hanging out” on a street corner, waiting for classes to end. According to Sturdivant, at approximately 3:20 p.m., his younger brother, Jermaine, approached him and said, “You better be careful.... I just seen them boys going through the cut.” (R. 60.) The “cut” was a walk-through near the high school. Despite his brother’s warning, Sturdivant remained on the street corner.
According to Sturdivant, approximately 15 minutes later, as school was letting out and students were beginning to walk home, he saw a burgundy-colored automobile driven by Brown, with Wells in the passenger seat, circling around the block near the high school. As the burgundy car circled the block, Sturdivant ran to join several of his friends who were walking with a crowd of between 15 to 20 students. Sturdivant stated that as soon as he caught up with his friends in the crowd of students, he heard several gunshots. According to Sturdivant, as he and the others in the crowd began running for cover, he looked up to see Wells and Brown firing guns into the crowd from the burgundy car. Sturdivant was not hit by the gunfire, but several students in the crowd were struck. After Wells and Brown stopped shooting, they drove away. Approximately one minute later, a green automobile driven by Rodney Austin drove up and someone in the car began firing more shots into the crowd.
Testimony indicated that eight Phillips High School students were injured as a result of the shootings. The most seriously injured student was Corey Shelton, who was struck in his arm and lower back by shotgun pellets. As a result of the shooting, Shelton was hospitalized for approximately a week and a half. Doctors were unable to remove one of the pellets that struck him in the back and lodged in his stomach.
The eight injured students testified at trial and substantially corroborated Sturdi-vant’s testimony. Five of the eight students saw the shots being fired from the burgundy car; the other three did not see the car, but only heard the shots. Two of the eight students saw the green car following the burgundy car and shooting into the crowd; the other six either did not remember seeing a green car or saw no car at all. All eight students testified that they did not know Wells, Brown, or Austin.
Wells, Brown, and Austin were each charged with one count of attempted murder as to Sturdivant and one count of attempted murder as to Corey Shelton. The three were tried together as codefend-ants. Wells and Brown were found guilty of the attempted murder of Sturdivant and of the lesser included offense of assault in the first degree with respect to the shooting of Shelton. Austin was acquitted of all charges.
In arguing that the evidence was insufficient to sustain his conviction for the attempted murder of Sturdivant, Wells maintains that the State failed to prove that, when he fired into the crowd of stu *415 dents, he had the specific intent to kill Sturdivant.
“In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as, true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust.”
Powe v. State, 597 So.2d 721, 724 (Ala. 1991) (citations omitted).
“ ‘In Alabama a person commits the crime of attempt to murder if he intends to cause the death of another person and does any overt act towards the commission of that intent. Alabama Code 1975, Sections 13A-4-2 (the attempt statute), and 13A-6-2 (murder).’ Chaney v. State, 417 So.2d 625, 626-27 (Ala.Cr. App.1982). See also Barnes v. State, 571 So.2d 372, 374 (Ala.Cr.App.1990). ‘Attempted murder is a specific intent crime.... An attempt to commit murder requires the perpetrator to act with the specific intent to commit murder. ... A general felonious intent is not sufficient.’ Free v. State, 455 So.2d 137, 147 (Ala.Cr.App.1984).”
Minshew v. State, 594 So.2d 703, 704 (Ala. Cr.App.1991). “ ‘While proof of the intent to murder is an element of the burden of proof resting on the state, this intent is not susceptible of positive proof, but rests in inference to be drawn by the jury from all the evidence in the case.’ ” Id. at 708, quoting Williams v. State, 13 Ala.App. 133, 137, 69 So. 376, 377 (1915). Intent may be presumed from the use of a deadly weapon, the character of the assault, and other attendant circumstances surrounding the assault. Chaney v. State, 417 So.2d 625 (Ala.Cr.App.1982). Furthermore, “[t]he question of intent in an attempt case ‘belong[s] exclusively to the jury to decide.’ ” Minshew, 594 So.2d at 708, quoting United States v. Quincy, 31 U.S. (6 Pet.) 445, 8 L.Ed. 458 (1832).
Here, looking at the evidence in a light most favorable to' the State, a jury could reasonably have inferred from the circumstances surrounding the shooting that Wells intended to kill Sturdivant when he fired the gun into the crowd of students of which Sturdivant was a part. Sturdivant testified that he and Wells had argued earlier in the day about marijuana and that Wells later approached him and his friends on a basketball court and began shooting at them. Minutes after the initial shooting incident, Wells returned in the burgundy car and opened fire into the crowd where Sturdivant was standing. All eight high school students who were injured by buckshot fired from a shotgun testified that they did not know Wells or his codefendants. This evidence was sufficient to send the case to the jury on the question of Wells’s intent to kill Sturdi-vant.
Wells also argues that there was no evidence that the shotgun used in the shooting “had the capability of killing any of the individuals who were shot.” (Wells’s brief at p. 13.) He maintains that an individual can be shot with pellets fired from a shotgun with “little or no damage” if the shooting occurs from a great distance, and that the State failed to prove that the shooting occurred in sufficient proximity to Sturdivant to make it possible that he could have been killed by the shots. (Wells’s brief at p. 13.)
Leaving aside the fact that a shotgun is clearly a “deadly weapon” under § 13A-1-2(11), Ala.Code 1975, and laying aside the evidence that one of the persons struck during the shootings, Corey Shelton, sustained serious injuries (evidencing the potentially lethal nature of a shotgun), we point out that Wells makes this argument for the first time on appeal. At trial, *416 Wells moved for a judgment of acquittal on the ground that the State had failed to prove that he had the specific intent to kill Sturdivant when he fired into the crowd. He did not advance at trial an argument that the shotgun was incapable of killing anyone from the distance at which it was fired. “ ‘The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial.’ ” Brown v. State, 701 So.2d 314, 318 (Ala.Cr. App.1997), quoting Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). Accordingly, Wells did not preserve this claim for appellate review.
The trial court did not err in denying Wells’s motion for a judgment of acquittal.
II.

Rule 32 Issues

Wells contends that the trial court erred in denying his Rule 32, Ala.R.Crim.P., petition without holding an evidentiary hearing. In his petition, Wells alleged that his trial counsel was ineffective for the following reasons:
1. Counsel allegedly failed to file a timely notice of appeal;
2. Counsel allegedly failed to speak to Wells or to discuss the case with him at any time before the day of trial; and
3. Counsel allegedly failed to contact or to call numerous witnesses who Wells maintained could testify that he was not involved in the crime.
In ruling upon Wells’s petition, the trial court granted him an out-of-time appeal. However, the trial court denied him relief as to the remaining claims in the petition, stating as to those claims only that “[t]his court finds that trial counsel was not ineffective as to defendant’s remaining allegations.” (C. 1.)
Wells maintains that the specific allegations of ineffective assistance contained in his petition, if true, warrant an evidentiary hearing. The State concedes that the basis for the trial court’s denial of Wells’s ineffective-assistance claims cannot be discerned from the record and asks this court to remand the case to the trial court so that that court may enter an order stating its reasons for denying Wells’s claims or take additional evidence with respect to those claims, if necessary. In accordance with the State’s request, we remand this case to the trial court with directions that it make specific findings as to the allegations of ineffective assistance of counsel raised in Wells’s petition.[2] The trial court may dispose of those claims through any of the methods set out in Rule 32.9(a), Ala. R.Crim.P. The trial court shall take all necessary action to ensure that the circuit clerk makes due return to this court at the earliest possible time and no later than 56 days from the date of this opinion. The return to remand shall include the trial court’s written findings along with a transcript of the evidentiary hearing, if any, and other evidence taken by the court.
AFFIRMED AS TO CONVICTION ON DIRECT APPEAL; REMANDED WITH DIRECTIONS AS TO APPEAL FROM DENIAL OF RULE 32 PETITION.*
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.

. Wells does not challenge the sufficiency of the evidence to sustain his conviction for assault in the first degree.

. In his brief filed with this court, Wells also argues that his trial counsel was ineffective for failing to request a written jury instruction on self-defense and for failing to object to certain hearsay testimony from a witness at trial. These matters were not presented to the trial court in a motion for a new trial or in Wells’s Rule 32 petition. Therefore, they were not preserved for purposes of appellate review.

 Note from the reporter of decisions: On October 22, 1999, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On December 3, 1999, that court denied *417 rehearing, without opinion. On April 14, 2000, the Supreme Court denied certiorari review, without opinion (1990512).