894 So.2d 793 (2004)
Danny Ray GINN
v.
STATE of Alabama.
CR-02-2257.
Court of Criminal Appeals of Alabama.
May 28, 2004.
Rehearing Denied July 30, 2004.
*795 Kathryn Curtis Montgomery (withdrawn 1/14/2004); and Shaunathan Bell, Fort Payne, for appellant.
William H. Pryor, Jr., atty. gen., and Nancy M. Kirby, deputy atty. gen., for appellee.
SHAW, Judge.
The appellant, Danny Ray Ginn, pleaded guilty to the unlawful possession of a controlled substance, methamphetamine, a violation of § 13A-12-212(a)(1), Ala.Code 1975, and to the unlawful manufacture of a controlled substance, methamphetamine, a violation of § 13A-12-218, Ala.Code 1975. He was sentenced, as a habitual offender with three prior felony convictions, to life imprisonment; the sentences were to run concurrently.[1]

I.
Ginn first contends that his guilty pleas were involuntary because, he says, the trial court did not properly advise him of the minimum and maximum sentences he could receive pursuant to the Habitual Felony Offender Act ("HFOA"), § 13A-5-9, Ala.Code 1975, as required by Rule 14.4, Ala.R.Crim.P. However, Ginn did not present this claim to the trial court. Although Ginn filed a motion for a new trial in which he challenged the voluntariness of his pleas, he did so on a different ground from the one he now raises on appeal.[2] "`The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" Culp v. State, 710 So.2d 1357, 1359 (Ala.Crim.App.1996), quoting Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). "`[C]laims relating to the voluntariness of guilty pleas must first be presented to the trial court or they are waived on direct appeal.'" Danzey v. State, 703 So.2d 1019, 1019 (Ala.Crim.App.1997), quoting Anderson v. State, 668 So.2d 159, 162 (Ala.Crim.App.1995). Because this specific claim was not first presented to the trial court, it is not properly before this Court for review.

II.
Ginn next contends that his sentences were improperly enhanced under the HFOA. Specifically, he argues that two of the three prior convictions used to enhance his sentences were not valid for use under the HFOA.
At the sentencing hearing, the State introduced into evidence documents relating to three prior convictions  a 1989 conviction in Alabama for burglary, a 1973 guilty-plea conviction in Georgia for burglary, and a 1973 guilty-plea conviction in Georgia for theft. Ginn does not challenge the 1989 Alabama conviction. With respect to the two Georgia convictions, Ginn makes two arguments.

A.
First, Ginn contends that the two prior Georgia convictions were not, in fact, convictions *796 because, he says, they were entered under Georgia's first-offender law, and that, therefore, they were not valid for use under the HFOA.
Although Ginn did not object to the use of these priors at the sentencing hearing but instead raised this issue for the first time in his motion for a new trial, the use of an invalid prior conviction for sentence enhancement renders a sentence illegal, and a challenge to an illegal sentence is jurisdictional and can be raised at any time. See, e.g., Ex parte Casey, 852 So.2d 175 (Ala.2002) (Rule 32, Ala. R.Crim. P., petitioner's claim, that he had received a full pardon on the six prior convictions used to enhance his sentence and that, therefore, the convictions were not valid for use as enhancement, was a jurisdictional issue regarding the legality of the sentence); Bell v. State, 845 So.2d 856 (Ala.Crim.App.2002) (Rule 32 petitioner's claim, that one of the prior convictions used to enhance his sentence was a misdemeanor conviction, was a jurisdictional issue challenging the legality of the sentence); Carter v. State, 853 So.2d 1040 (Ala.Crim.App.2002) (Rule 32 petitioner's claim, that one of the prior convictions from another jurisdiction used to enhance his sentence arose from conduct that was not a felony in Alabama, was a jurisdictional issue challenging the legality of the sentence); and Jones v. State, 585 So.2d 180 (Ala.Crim.App.1991) (appellant's claim, that two prior convictions used to enhance his sentence were based on pleas of nolo contendre, was a jurisdictional issue that did not have to be preserved in the trial court).
At the time of Ginn's guilty pleas in Georgia, in 1973, Ga.Code Ann. § 27-2727 (1972) (now Ga.Code Ann. § 42-8-60 (2003)), provided:
"Upon a verdict or plea of guilty or a plea of nolo contendere b[ut] before an adjudication of guilt, the court may, in the case of a defendant who has not been previously convicted of a felony, without entering a judgment of guilt and with the consent of the defendant, defer further proceeding and place the defendant on probation as provided by the Statewide Probation Act [§§ 27-2702 through 27-2726.1]. Upon violation of the terms of probation, or upon a conviction for another crime, the court may enter an adjudication of guilt and proceed as otherwise provided. No person may avail himself of the provisions of this law [§§ 27-2727 through 27-2732] on more than one occasion."
In addition, Ga.Code Ann. § 27-2728 (now Ga.Code Ann. § 42-8-62) provided:
"Upon fulfillment of the terms of probation, or upon release by the court prior to the termination of the period thereof, the defendant shall be discharged without court adjudication of guilt. Such discharge shall completely exonerate the defendant of any criminal purpose, shall not effect any civil right or liberties, and he shall not be considered to have a criminal conviction. Should a person be placed under probation under this law [§§ 27-2727 through 27-2732], a record of the same shall be forwarded to the office of the State Probation System and to the Identification Division of the Federal Bureau of Investigation."
(Emphasis added.) In Gunter v. State, 182 Ga.App. 548, 356 S.E.2d 276 (1987), the Georgia Court of Appeals explained the first-offender law as follows:
"[S]ince [the appellant] was dealt with under the First Offender Act, there has been no adjudication on the plea; it has simply been tendered and accepted for the purpose of imposing punishment which, if successfully completed by defendant, will relieve him of any judgment of guilt and hence of any conviction. *797 [Ga.Code. Ann.] § 42-8-62. That section expressly provides: `The discharge shall completely exonerate the defendant of any criminal purpose and shall not affect any of his civil rights or liberties; and the defendant shall not be considered to have a criminal conviction.' The wording of [Ga.Code Ann.] §§ 42-8-63 and 42-8-64 also demonstrate that there is no conviction unless there is an adjudication following nonfulfillment of the court's terms.
"As explained in State v. Wiley, 233 Ga. 316, 317, 210 S.E.2d 790 (1974): `Any probationary sentence entered under this Act is preliminary only, and, if completed without violation, permits the offender complete rehabilitation without the stigma of a felony conviction.' Again in Favors v. State, 234 Ga. 80, 86, 214 S.E.2d 645 (1975), the Supreme Court states: `under our law, the formal act of "conviction" is not completed for a person who satisfactorily completes the probationary period.' We recognized this in Hightower v. Gen. Motors Corp., 175 Ga.App. 112, 113(1), 332 S.E.2d 336 (1985). The point is that while there is an acceptance of the plea for the purpose of imposing a period of probation, there is no adjudication based on that plea. Rather, the court act of adjudicating is suspended and will never occur if probation is fulfilled."
182 Ga.App. at 549, 356 S.E.2d at 277. See also Melton v. State, 216 Ga.App. 215, 454 S.E.2d 545 (1995). In other words, a guilty plea under Georgia's first-offender law is not considered a "conviction" if the terms of probation are completed and the defendant is discharged. Such a plea cannot be used to enhance future sentences, see Williams v. State, 228 Ga.App. 62, 492 S.E.2d 290 (1997), nor can it be used for impeachment, see Matthews v. State, 268 Ga. 798, 493 S.E.2d 136 (1997). See also Priest v. State, 261 Ga. 651, 409 S.E.2d 657 (1991) (a defendant who pleads guilty to the unlawful possession of a controlled substance pursuant to the first-offender law has not been "convicted" and, thus, mandatory driver's license suspension for persons convicted of the unlawful possession of a controlled substance, Ga.Code Ann., § 40-5-75, is not required).
Thus, the question in this case is whether Ginn's guilty pleas in Georgia were, in fact, felony convictions that could be used for sentence enhancement under the HFOA or whether they were entered under Georgia's first-offender law. After thoroughly reviewing the record, we conclude that it does not support Ginn's claim that his Georgia pleas were entered under Georgia's first-offender law and were, therefore, not valid felony convictions under the HFOA.
At the sentencing hearing, the State introduced into evidence certified copies of the Georgia indictment charging Ginn with burglary and theft, and the Georgia trial court's sentencing orders regarding the burglary and theft convictions. The copy of the indictment indicated that Ginn waived arraignment, initially pleaded not guilty, and then withdrew the plea of not guilty and entered guilty pleas.[3] (C. 114.) The sentencing order for the burglary charge indicates that Ginn pleaded guilty to the charge, and then states, in pertinent part:
"Whereupon it is ordered and adjudged by the Court: That the defendant serve the full term of 5 (years) in *798 the Penitentiary or such other institution as the Director of the State Board of Corrections may direct, to be computed as provided by law.
"....
"However, the defendant is given leave to serve the 5 years said sentence outside of said penitentiary, Public Works Camp, and jail on Probation."
(C. 116.) The sentencing order for the theft charge indicates that Ginn pleaded guilty to the charge, and then states, in pertinent part:
"Whereupon, it is adjudged by the Court: That the defendant in the attached case be remanded to the common jail of this County and there to be kept until an officer be sent from the State Board of Corrections, and then be delivered to whomsoever shall be so sent, and that said defendant be imprisoned at hard labor in the State Penitentiary or in such other institution as the Director of Corrections may direct, for and during a term of one year[ ], to be computed according to law. Said sentence to run consecutively to Count I [the burglary charge].
"....
"However, the defendant is given leave to serve the one year of said sentence outside of said penitentiary or such other institution as the Director of Corrections may direct on probation...."
(C. 117.) Nothing in any of the documentation mentions Georgia's first-offender law or states that the pleas were entered pursuant to that law.
In Alabama, the State bears the burden of proving the existence of prior felony convictions for enhancement under the HFOA. See Tyler v. State, 683 So.2d 1062 (Ala.Crim.App.1995), aff'd, 683 So.2d 1065 (Ala.1996); Reynolds v. State, 615 So.2d 94 (Ala.Crim.App.1992); and Meadows v. State, 473 So.2d 582 (Ala.Crim.App.1985). Rule 26.6(b)(3)(iii), Ala.R.Crim.P., provides:
"At the [sentencing] hearing, the burden of proof shall be on the state to show that the defendant has been convicted of a previous felony or felonies. Evidence may be presented by both the state and the defendant as to any matter the court deems relevant to the application of the law. In determining disputed facts, the court shall use the standard of proof beyond a reasonable doubt. If at the hearing the defendant disputes any conviction presented by the state, the court may allow the state to present additional evidence of the disputed conviction, either by way of rebuttal or at a future time to be set by the court. If the state fails to meet its burden of proof to establish one or more prior felony convictions, then the defendant shall not be sentenced as an habitual offender."
"Certified case action summaries and other certified records from the clerk of the court are sufficient to prove prior convictions." Daughtry v. State, 587 So.2d 1286, 1286 (Ala.Crim.App.1991). See also § 13A-5-10.1(a), Ala.Code 1975 ("Certified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime."); and Ervin v. State, 630 So.2d 115, 119 (Ala.Crim.App.1992) (holding that a prior conviction from another state "may be proved either as provided by Ala.Code 1975, § 12-21-70, or as provided by Rule 44(a)(1), A.R.Civ.P."). Moreover, the documentation introduced by the State need not specifically state that there was an "adjudication of guilt":
"The requirement that there has been an `adjudication of guilt' does not require exact and specific terminology in order to satisfy the requirements of the *799 HFOA. Giving this statute its practical application, where the record shows that the appellant pleaded guilty in court in the presence of his attorney and a sentencing order was then filed, as acknowledged by the circuit court, this must be construed as an adjudication of guilt in order `to prevent absurdity, hardship, or injustice, and to favor public convenience.' Baker v. State, 483 N.E.2d 772, 774 (Ind.App.1985)."
Morgan v. State, 733 So.2d 940, 943 (Ala.Crim.App.1999)(footnote omitted.).
"This court has held that, once the State has made proper proof of a prior conviction for the sentencing purposes and the defendant objects, the defendant bears the burden of presenting evidence in support of his objection." Campbell v. State, 709 So.2d 1329, 1335 (Ala.Crim.App.1997). "The burden of showing that a prior conviction is invalid for enhancement purposes is on the appellant." Thigpen v. State, 825 So.2d 241, 245 (Ala.Crim.App.2001) (opinion on return to remand) (Rule 32 petitioner's claim that his sentence was improperly enhanced was meritless because the petitioner failed to offer evidence proving that he was not represented by counsel and the case action summary introduced by the State affirmatively indicated that he was represented by counsel). See also Tyler, 683 So.2d at 1064 (appellant's claim that his sentence was improperly enhanced was meritless because the appellant failed to offer evidence proving that he was not represented by counsel and the State's evidence reflected that he was represented by counsel), and Weeks v. State, 473 So.2d 589, 591 (Ala.Crim.App.1985)(name on documentation of Louisiana convictions matched appellant's name, thus creating "a prima facie presumption of the sameness of the person" and the appellant did not present any evidence to rebut that presumption).
In this case, the State met its burden of proof with respect to the prior Georgia convictions. The certified documents introduced into evidence by the State show that Ginn was convicted in 1973 of burglary and theft, and they do not state or suggest that the pleas were entered under Georgia's first-offender law.[4] Thus, the burden shifted to Ginn to prove that the prior Georgia pleas were entered under Georgia's first-offender law and thus were not, in fact, convictions. Ginn, however, presented no evidence in that regard; therefore, he failed to satisfy his burden.
Because Ginn's claim that the prior Georgia convictions were not valid for use under the HFOA is not supported by the record, he is entitled to no relief on this claim.

B.
Second, Ginn contends that his 1973 guilty-plea conviction for theft in Georgia was not valid for use under the HFOA because, he says, the conduct forming the basis for that offense  the theft from a railroad car of railroad journals having a value of $133.02  would have been a misdemeanor in Alabama in 1973.
*800 It is well settled that "[i]n determining whether an out-of-state conviction will be used to enhance punishment pursuant to the HFOA, the conduct upon which the foreign conviction is based must be considered and not the foreign jurisdiction's treatment of that conduct." Daniels v. State, 621 So.2d 335, 342 (Ala.Crim.App.1992). However, contrary to Ginn's contention, whether the conduct upon which the foreign conviction was based constituted a felony in Alabama at the time the conduct occurred is irrelevant. Rather, pursuant to Rule 26.6(b)(3)(iv), Ala.R.Crim.P., the proper inquiry is whether the conduct upon which the foreign conviction was based would have been a felony in Alabama had it been committed on or after January 1, 1980.[5] Rule 26.6(b)(3)(iv) specifically provides:
"Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under Act 607, § 130(4), Acts of Alabama 1977, p. 812 (§ 13A-1-2(4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980; and further, a conviction of a crime against the United States shall be considered to be a felony conviction if that crime is punishable by imprisonment in excess of one (1) year under federal law, and was so punishable at the time of its commission, even if the conduct made the basis of that conviction would not be punishable under Alabama law."
(Emphasis added.) As the Alabama Supreme Court noted in Thompson v. State, 525 So.2d 820 (Ala.1985), when discussing the predecessor to Rule 26.6(b)(3)(iv):
"By adopting Temporary Rule 6, [the predecessor to Rule 26.6(b)(3)(iv), Ala.R.Crim.P.,] this Court placed emphasis on the `conduct' made the basis of the prior conviction, rather than where it occurred, or when it occurred. This Court, therefore, made the triggering mechanism not whether another jurisdiction might have punished the prior offense by imprisonment for more than one year, but whether Alabama considered the prior `conduct' so blameworthy as to merit more than one year's imprisonment. The wording of the rule, therefore, has the following effect: (1) A conviction for an `offense' committed in Alabama prior to January 1, 1980, or after January 1, 1980, for that matter, punishable by a sentence of more than one year, is a `felony conviction'; thus, the fact that a defendant was convicted in Alabama and received a sentence of more than a year would necessarily mean that the prior conviction is a `prior felony'; (2) A conviction in any other jurisdiction, at any time, for a criminal act punishable in the other jurisdiction by a sentence exceeding one year, however, is not a `felony conviction' unless the act `would have been' punishable under our own criminal laws on or after January 1, 1980, by a sentence exceeding one year."
525 So.2d at 826 (some emphasis in original; some emphasis added).
On January 1, 1980, § 13A-8-4 Ala.Code 1975, provided, in relevant part:
"(a) The theft of property which exceeds $100.00 in value but does not exceed $1,000.00 in value, and which is not taken from the person of another, constitutes *801 theft of property in the second degree.
"(b) Theft of property in the second degree is a Class C felony."
The conduct forming the basis of Ginn's 1973 Georgia theft conviction  the theft from a railroad car of railroad journals having a value of $133.02  would have constituted a Class C felony under § 13A-8-4(a) had it been committed in Alabama on January 1, 1980. Therefore, pursuant to Rule 26.6(b)(3)(iv), the prior theft conviction was a felony conviction and could properly be used to enhance Ginn's sentence.
Moreover, the fact that § 13A-8-4 was amended effective October 7, 1992, to, among other things, increase the minimum value in subsection (a) to $250, see Act No. 92-682, Ala. Acts 1992, so that Ginn's conduct would not be considered a felony if it had been committed on or after October 7, 1992, does not change our conclusion.[6] As noted above, Rule 26.6(b)(3)(iv) specifically provides that if the conduct forming the basis of the foreign conviction would have constituted a felony had it taken place in Alabama "on or after January 1, 1980" then the foreign conviction is considered to be a felony conviction for purposes of the HFOA. Nothing in the rule requires that the conduct constitute a felony continuously from January 1, 1980, to the present.
Because the conduct forming the basis of Ginn's Georgia theft conviction would have constituted a Class C felony if it had taken place in Alabama on January 1, 1980, it was properly used to enhance Ginn's sentence under the HFOA.

III.
Ginn also contends that his trial counsel was ineffective because, he says, counsel advised him before he entered his pleas that his sentences would not be enhanced under the HFOA and, after he was sentenced pursuant to the HFOA, counsel did not file a motion to withdraw his pleas. As noted above, Ginn filed a motion for a new trial. In that motion, Ginn challenged his trial counsel's effectiveness; however, he did so on grounds different from those he now raises on appeal.[7] "`The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" Culp v. State, 710 So.2d at 1359, quoting Ex parte Frith, 526 So.2d at 882. "`[W]e will not make exception to the rule that a claim for ineffective assistance of counsel may not be considered on appeal if it was not first presented to the trial court.'" Brown v. State, 701 So.2d 314, 319 (Ala.Crim.App.1997), quoting Ex parte Jackson, 598 So.2d 895, 897 (Ala.1992), overruled on other grounds, Ex parte Ingram, 675 So.2d 863, 865 (Ala.1996). Because the specific allegations of ineffective assistance of trial counsel Ginn raises on appeal were never presented to the trial court, they are not properly before this Court for review.

IV.
Finally, Ginn contends that the trial court erred in denying his motion to suppress the evidence seized during a search of his mobile home. After thoroughly reviewing *802 the record, we find that this issue is not properly before this Court for review.
The record reflects that at the conclusion of the suppression hearing, the trial court denied Ginn's motion to suppress. Ginn's counsel then requested a short recess so that he could discuss with Ginn how to proceed with the case. After the recess, Ginn and his counsel returned and Ginn entered guilty pleas to the unlawful possession and the unlawful manufacture of a controlled substance. The following then occurred during the plea colloquy:
"THE COURT: All right. The Court will accept your plea of guilty in each of these two cases and adjudges you guilty of unlawful possession of a controlled substance in case 01-864, and I'll adjudge you guilty of unlawful manufacture of a controlled substance in the first degree in case 02-677. I'm going to defer sentencing in these cases until such time as I have the benefit of a pre-sentence report. I'll ask the probation office to do an investigation of your background and a report to me, and I will conduct a sentencing hearing on August the 12th at nine o'clock, and you will need to be back in court at that time for that purpose. Is there anything else we need to address today?
"[Prosecutor]: Your Honor, I have filed notice with the Court of other collateral acts alleged against Mr. Ginn, including some 24 separate arrests for various items or offenses, including I believe he previously failed to appear in this case that's set today and a previous warrant was issued for his arrest for which he has made another subsequent bond. Since he now stands before the Court convicted of these two offenses I would ask that the defendant's bond be revoked and [he] be remanded.
"[Ginn's counsel]: Your Honor, we have received a copy of the document from the State. We have not had a chance to respond to that. We would like for the Court to recognize that we are preserving an issue on appeal which was whether the Court erred in ruling that the police officer in the case had a reasonable basis for accepting the consent of the purported landowners and also whether the search of the defendant's mobile home was in fact lawful. We want to make sure we reserve those two issues for appeal.
"THE COURT: All right. Let the record reflect that. I think probably at the time of sentencing that needs to be renewed.
"[Ginn's counsel]: Okay, Judge, and of course, that would go to the unlawful manufacturing case. I think that's the CC-01-864 case.
"THE COURT: All right. I'm going to grant the State's request that the bond  previously existing bonds be revoked.
"[Ginn's counsel]: Judge, I don't know of anything else that we need to address from our standpoint.
"THE COURT: Anything further from the State?
"[Prosecutor]: No, sir.
"THE COURT: All right, that's all"
(R. 134-36.) At the conclusion of the sentencing hearing, the following occurred:
"THE COURT: ... Now, let me explain to you, Mr. Ginn, that unless you specifically reserve an issue for appeal, you have no right to appeal convictions from guilty pleas, and I take it that there have been no issues reserved.
"[Ginn's counsel]: Judge, the only issue that we might mention is back in August or June was the suppression issue. We would like to reserve it for *803 appeal. We did have a motion to suppress issue.
"THE COURT: All right. The Court notes that the defense has reserved for appeal the Court's rulings on the suppression issue that was taken up at the time the case was set for trial."
(R. 165-66.)
"[B]y pleading guilty, a defendant waives all nonjurisdictional defects occurring before the plea. See, e.g., Martin v. State, 579 So.2d 69, 70 (Ala.Cr.App.1991). Because `a guilty plea represents a break in the chain of events which has preceded it in the criminal process,' Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), we have required a defendant who wishes to appeal an adverse ruling on an issue raised prior to the entry of the plea to inform the trial court, at the time he enters his plea, that he intends to reserve that issue for appeal. See Sawyer v. State, 456 So.2d 110 (Ala.Cr.App.1982), reversed after record supplemented, 456 So.2d 112 (Ala.1983). The defendant's plea is, in effect, conditioned on his right to appeal the prior adverse ruling. See 2 W. LaFave & J. Israel, Criminal Procedure, § 20.6(b) (1984). Recently, Justice Maddox summarized the Alabama law on this point as follows:
"`Ordinarily, a guilty plea waives all nonjurisdictional matters, including a trial court's refusal to suppress evidence, but this Court has, by case law, permitted an exception to that general rule when a defendant specifically reserves his or her right to appeal such a ruling on a motion to suppress, as this petitioner did. Ex parte Sawyer, 456 So.2d 112 (Ala.1983) (defendant allowed to supplement record on appeal to show that search and seizure issue was reserved when the plea of guilty was entered).'
"Ex parte Hergott, 588 So.2d 911, 916 (Ala.1991) (Maddox, J., dissenting) (emphasis in original).
"As Justice Maddox's parenthetical explanation of Sawyer indicates, a defendant must reserve his right to appeal an adverse ruling on an issue arising before the plea `when the plea of guilty [is] entered.' The reason behind such a requirement is clear: because a guilty plea waives all nonjurisdictional defects in proceedings occurring before the plea, Martin, supra, and `a guilty plea represents a break in the chain of events which has preceded it in the criminal process,' Tollett, supra, an unconditional plea must be taken to represent the defendant's decision to [forgo] any challenge to events occurring before the plea. If the defendant does not intend to [forgo] such challenges, he must make that intent clear before he enters his plea."
Prim v. State, 616 So.2d 381, 382-83 (Ala.Crim.App.1993)(some emphasis in original; some emphasis added).
Ginn did not expressly reserve the right to appeal the trial court's denial of his motion to suppress before he entered his guilty pleas. Rather, he waited until after his pleas had been entered and the trial court had adjudged him guilty of the offenses before voicing his request to reserve the right to appeal the suppression issue.
Moreover, unlike Smith v. State, 884 So.2d 3 (Ala.Crim.App.2003), and Rivers v. State, 666 So.2d 33 (Ala.Crim.App.1994), there is no indication in the record in this case that the trial court or the State was aware, before Ginn's counsel's belated attempt to reserve the issue, that Ginn intended to appeal the denial of his motion to suppress. In Rivers, after the entry of the guilty pleas, Rivers's counsel stated *804 "I'd like to put on the record that this plea is entered, reserving the right to appeal the court's denial of the motion to suppress." 666 So.2d at 34. The trial court responded "The Court understands that." 666 So.2d at 34. Finding the record to be unclear, this Court remanded the case for the trial court to clarify whether there was a preexisting agreement between the parties that Rivers was reserving his right to appeal the suppression issue. Similarly, in Smith, after the entry of the guilty plea, Smith's counsel indicated that Smith wanted to reserve the right to appeal the trial court's denial of his motion to suppress; in response, the trial court stated "That's right. It rang a bell." 884 So.2d at 6. Finding the trial court's statement ambiguous, this Court again remanded for the trial court to clarify whether there was a preexisting agreement between the parties that Smith was reserving his right to appeal the suppression issue.
The record in this case, however, is not ambiguous. In response to Ginn's counsel's attempt to reserve the suppression issue for appeal, the trial court merely stated "All right. Let the record reflect that." (R. 136.) At the sentencing hearing, the trial court initially indicated that no issues had been reserved for appeal, and only after Ginn's counsel again attempted to reserve the suppression issue did the trial court state for the record that the issue had been reserved.[8] Nothing in the trial court's statements at the plea colloquy or at the sentencing hearing suggest that the trial court was aware that Ginn wanted to reserve the suppression issue until Ginn first mentioned it  after he had entered his pleas.
Therefore, because Ginn did not expressly reserve the right to appeal the trial court's denial of his motion to suppress before he entered his pleas and because there is no indication in the record that there was a preexisting agreement between the parties that Ginn was reserving the right to appeal the suppression issue, this issue is not properly before this Court for review.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur. COBB, J., concurs in part and dissents in part, with opinion.
COBB, Judge (concurring in part and dissenting in part).
I agree with the majority's rationale in affirming the claims discussed in Parts I through III of the opinion. However, I respectfully dissent from the majority's finding that the issue discussed in Part IV was not preserved for appellate review.
Part IV of the majority opinion creates the same concerns I had in Lewis v. State, 890 So.2d 214 (Ala.Crim.App.2003). I understand that Rule 14.4(a)(1)(viii), Ala. R.Crim. P., specifically states that
"[t]he fact that there is no right to appeal unless the defendant has, before entering the plea of guilty, expressly reserved the right to appeal with respect to a particular issue or issues, in which event appellate review shall be limited to a determination of the issue or issues so reserved."
(Emphasis added.) However, it is apparent that there was a discussion between defense counsel and Ginn about appealing the motion to suppress before the guilty plea was entered because trial counsel requested a recess to discuss with Ginn how *805 to proceed with the case. Afterwards, the trial court allowed Ginn to reserve his claim for appeal even though the objection technically followed the entry of his guilty plea.
"THE COURT: All right. The Court will accept your plea of guilty in each of these two cases and adjudges you guilty of unlawful possession of a controlled substance in case 01-864, and I'll adjudge you guilty of unlawful manufacture of a controlled substance in the first degree in case 02-677. I'm going to defer sentencing in these cases until such time as I have the benefit of a pre-sentence report.... Is there anything else we need to address today?
"MR. BAXLEY [the prosecutor]: Your Honor, I have filed notice with the Court of other collateral acts alleged against Mr. Ginn, including some 24 separate arrests for various items or offenses.... Since he now stands before the Court convicted of these offenses I would ask that the defendant's bond be revoked and be remanded.
"MR. FRICKS [defense counsel]: Your Honor, we have received a copy of the document from the State. We have not had a chance to respond to that. We would like for the Court to recognize that we are preserving an issue on appeal which was whether the Court erred in ruling that the police officer in the case had a reasonable basis for accepting the consent of the purported landowners and also whether the search of the defendant's mobile home was in fact lawful. We want to make sure we reserve those two issues for appeal.
"THE COURT: All right. Let the record reflect that. I think probably at the time of sentencing that needs to be renewed."
(135-36.)
The following transpired at sentencing.
"THE COURT: ... Now, let me explain to you, Mr. Ginn, that unless you specifically reserve an issue for appeal, you have no right to appeal convictions from guilty pleas, and I take it that there have been no issues reserved.
"MR. FRICKS: Judge, the only issue that we might mention is back in August or June was the suppression issue. We would like to reserve it for appeal. We did have a motion to suppress issue.
"THE COURT: All right. The Court notes that the defense has reserved for appeal the Court's ruling on the suppression issue that was taken up at the time the case was set for trial...."
(R. 165-66.)
In Lewis I expressed my view that we should reexamine our caselaw concerning the preservation of issues by a defendant before entering a guilty plea.
"I am concerned that the trial court's agreement to allow Lewis to preserve that issue for appellate review was part and parcel of his guilty-plea agreement. It is more than probable that trial counsel informed the defendant that, although he was pleading guilty, he was still preserving this issue for appeal; the trial court itself assured the defendant of that fact. One must ask whether Lewis would have pleaded guilty without an assurance that this issue had been preserved for appellate review. Cf. Tollett v. Henderson, 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (`The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity.'). That is, I am concerned that if we hold that this issue was in fact not preserved for appellate review, when the defendant was apprised by both counsel and the trial court that the issue was *806 preserved, we are nullifying a portion of the plea agreement, and, in turn, rendering this guilty plea involuntary. McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (`In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.' (emphasis added))."
Lewis v. State, 890 So.2d at 216 (Cobb, J., dissenting).
Based on the above, I must respectfully dissent from Part IV of the majority's opinion.
NOTES
[1] The sentences were also to run concurrently with another sentence of life imprisonment Ginn received for a Cherokee County conviction for the unlawful manufacture of a controlled substance. Ginn's appeal from the Cherokee County conviction is currently pending before this Court.
[2] In his motion for a new trial, Ginn alleged that his pleas were involuntary on the ground that the State "violated said blind plea as said plea rules of court was explained." (C. 89.) He maintained that "the terms of State's and court's rules" regarding the plea was that the State would have no input regarding his sentence, but that the district attorney made "comments about [his] priors in this state and another state" at the sentencing hearing in violation of the agreement. (C. 88-89.)
[3] The indictment contains a notation, signed by Ginn and his attorney, which states, in part, that, after waiving arraignment, Ginn "pleads not guilty." (C. 114.) However, the word "not" on the document is struck through and initialed by Ginn and his attorney, thus indicating that Ginn was withdrawing his plea of not guilty and pleading guilty.
[4] Our conclusion in this regard may very well have been different if the documentation introduced by the State affirmatively showed that Ginn's pleas had been entered under Georgia's first-offender law, but merely failed to show whether Ginn successfully completed the probationary term. See Melton v. State, 216 Ga.App. 215, 454 S.E.2d 545 (1995), in which the Georgia Court of Appeals remanded the case for a determination whether the appellant had successfully completed his probationary term imposed under Georgia's first-offender law or whether he had violated the terms of his probated sentence because there was no evidence in the record in that regard and, thus, the Court could not determine whether there was a prior conviction that was properly used for sentence enhancement.
[5] We note, however, that Ginn's conduct would have, contrary to his contention, constituted the crime of grand larceny, a felony, in 1973 in Alabama. See Title 14, Section 331, Ala.Code 1940 (Recomp.1958).
[6] Section 13A-8-4 was amended again effective September 1, 2003, to, among other things, increase the minimum value in subsection (a) to $500.
[7] In his motion for a new trial, Ginn alleged that his trial counsel was ineffective because, he said, (1) counsel "told [him] that the State's attorney had offered a 20-year term with a split on each case, but told [him] not to take it cause he could beat the case. At the attorney's advise, the defendant done as counsel told him to do," and (2) "counsel would not appeal sentence." (C. 89-90.)
[8] There is also a notation on the case action summary stating that at the sentencing hearing, the defendant "reserve[d] issues for appellate review." (C. 5; C. 19.)